John D. Morris (U.S.B. 6943)
Lauren DeVoe (U.S.B. 15122)
7070 South Union Park Center, Suite 220
Midvale, Utah 84047
Tel: (801) 790-9000
Fax: (801) 208-8209
Email: John@morrissperry.com
　　　 Lauren@morrissperry.com

*Attorneys for Plaintiff Kaylee Conlin*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| KAYLEE CONLIN, an individual,<br><br>　　　　　Plaintiff,<br>　　　　　　　vs.<br><br>RU CLIFF, LLC, a limited liability company; RIZE HOMESOURCE, LLC, a limited liability company; JON NEVIASER, an individual; LAW OFFICE OF KIRK A. CULLIMORE, L.L.C., a limited liability company; KIRK A. CULLIMORE, an individual,<br><br>　　　　　Defendants. | COMPLAINT<br><br>(Jury Trial Demanded)<br><br>Case No. 2:17-cv-01213-BCW<br><br>Magistrate Judge Brooke C. Wells |

Plaintiff Kaylee Conlin ("**Ms. Conlin**") hereby alleges and complains against defendants RU Cliff, LLC, Rize Homesource, LLC ("Rize"), Jon Neviaser ("Neviaser"), the Law Office of Kirk A. Cullimore, L.L.C., and Kirk A. Cullimore as follows:

**NATURE OF THE ACTION, PARTIES, JURISDICTION, AND VENUE**

1.      Ms. Conlin brings this action as the result of illegal and improper actions taken in response to her request for a reasonable accommodation to permit her to reside in her apartment with her emotional support animal.

2.      Ms. Conlin is an individual residing in Salt Lake City, Utah, and who is handicapped within the meaning of 42 U.S.C.A. § 3602(h) and has been previously diagnosed with an anxiety disorder.

3.      RU Cliff, LLC is a limited liability company with a registered address of 1600 South State Street, Salt Lake City, Utah 84115.

4.      RU Cliff, LLC owns the Cliffside Apartments, a multi-unit apartment complex with twenty-nine (29) units. The Cliffside Apartments are located at 720 North Wall Street, Salt Lake City, Utah 84103.

5.      Rize manages the Cliffside Apartments.

6.      Rize is a limited liability company with a principal address of 1600 South State Street, Salt Lake City, Utah 84115.

7.      Upon information and belief, Jon Neviaser is a resident of Salt Lake County, Utah.

8.      At all times relevant to the Complaint, Neviaser was an agent of Rize, and oversaw Rize's management of the Cliffside Apartments.

9.      The Law Offices of Kirk A. Cullimore, L.L.C. is a limited liability company with a principal office at 644 East Union Square, Sandy, Utah, 84070.

10. Kirk A. Cullimore is a Utah attorney and is believed to be the owner of the Law Offices of Kirk A. Cullimore, L.L.C. and is primarily responsible for the work product produced by the Law Offices of Kirk A. Cullimore, L.L.C.

11. Upon information and belief, Kirk A. Cullimore resides in Salt Lake County, Utah.

12. The Law Offices of Kirk A. Cullimore, L.L.C. and Kirk A. Cullimore are collectively referred to herein as "Cullimore."

13. The Court has jurisdiction over this action under 28 U.S.C.A. § 1331 and 42 U.S.C.A. § 3613(a).

14. Venue is proper in the District of Utah pursuant to 28 U.S.C.A. § 1391(b) because it is the judicial district in which all of the Defendants have their principal places of business or reside, and the judicial district in which the events or omissions giving rise to Ms. Conlin's claim occurred.

**FACTUAL BACKGROUND**
**(ALLEGATIONS COMMON TO EACH CLAIM FOR RELIEF)**

15. On June 16, 2015, Conlin leased an apartment at the Cliffside Apartments ("Cliffside") for a period of one (1) year and fifteen (15) days, until June 30, 2016.

16. Ms. Conlin's Cliffside apartment constitutes a "dwelling" within the meaning of the federal Fair Housing Act, 42 U.S.C.A. § 3602(b).

17. On Friday, November 20, 2015, at approximately 1:00 A.M., water began leaking into Ms. Conlin's apartment.

18.     Immediately upon hearing the leak, Ms. Conlin called Rize's emergency maintenance number to report the leak, and was told that someone would contact her within the hour.

19.     By approximately 1:45 A.M., the leak had worsened and Ms. Conlin had not yet been contacted by any agent of Cliffside or Rize, prompting Ms. Conlin to call Rize again to report the leak was getting worse.

20.     Ms. Conlin was again told that someone would contact her within the hour. Ms. Conlin was not contacted until 7:30 A.M., when Neviaser telephoned Ms. Conlin in response to her earlier telephone calls to the emergency maintenance line. Neviaser assured Ms. Conlin he would follow up on her maintenance requests.

21.     An individual eventually telephoned Ms. Conlin, and at around 9:00 A.M. several individuals arrived to clean up the water that had leaked into Ms. Conlin's apartment.

22.     At approximately 10:00 A.M., Von Dotson ("Dotson"), an agent of Rize, arrived at Ms. Conlin's apartment and talked to the cleanup crew. The cleanup crew told Dotson, in Ms. Conlin's presence, that mold was present in the apartment. Ms. Conlin saw the mold the cleanup crew referred to, and took photographs to document its presence. Dotson told Ms. Conlin that he needed to discuss what to do about the mold with Neviaser. The cleanup crew began drying out the water that had leaked into Ms. Conlin's apartment.

23.     Ms. Conlin later discovered that the basement ceiling was caving in because of the leak. Ms. Conlin called Neviaser at approximately 11:30 A.M. and informed him there was more damage than initially thought.

24.     Ms. Conlin, understandably concerned about the mold that the cleanup crew had alerted Dotson to, asked Neviaser about the mold. Neviaser told Ms. Conlin that he had spoken to Dotson, but stated, "There is no mold." Ms. Conlin informed Neviaser that she had personally observed the mold and photographed it, and emailed the photographs to Neviaser. Neviaser stated he would speak with Dotson and call Ms. Conlin back.

25.     When Neviaser called Ms. Conlin back, he did not discuss the presence of or plans to remediate the mold. Instead, Neviaser informed Ms. Conlin that she had a dog over fifty pounds in breach of her lease agreement. Neviaser instructed Ms. Conlin that she had three days to vacate the apartment and had to pay the total amount due under her lease for the entire remaining term of the lease—seven months of rental payments.

26.     In the same call, Neviaser then told Ms. Conlin he would "work with [her]," and that while Ms. Conlin would still need to vacate the apartment in three days, she may only be obligated to pay only an additional two months' rent, instead of all seven months.

27.     Neviaser had been previously made aware that Ms. Conlin had a Great Dane in her apartment, and Neviaser had previously stated that he had a similar dog of the same breed. Neither Neviaser, nor any other agent of Rize or RU Cliff, LLC had ever communicated to Ms. Conlin that her dog was a violation of her lease agreement until Ms. Conlin requested the remediation of mold.

28.     Following her conversation with Neviaser, Ms. Conlin experienced severe anxiety. She was distressed at the thought of having to either get rid of her dog, Buckley, or find a new place to live—which meant losing her security deposit and the impossible requirement of paying a new security deposit in addition to paying rent at both Cliffside and a new residence.

29. On Monday, November 23, 2015, Ms. Conlin sent an email to Neviaser, summarizing the water leak, mold discovery, and her impending eviction.

30. In her November 23, 2015 email, Ms. Conlin described the role Buckley plays in her life and how he alleviates her anxiety. In her email, Ms. Conlin further informed Neviaser that she believed Buckley qualified as a "comfort animal" and that she was entitled to an accommodation in the terms of her lease to permit her to keep Buckley at Cliffside. Ms. Conlin informed Neviaser that she would provide a letter from a healthcare provider upon request. Ms. Conlin asked Neviaser to refrain from proceeding with her eviction until he had granted or otherwise responded to her request for an accommodation.

31. Neviaser emailed Ms. Conlin in response the following afternoon, on Tuesday, November 24, 2015, and did not agree to refrain from proceeding with the eviction, but stated:

> Thank you for your request to keep Buckley as a companion animal. In order to confirm that your situation meets the requirements for a companion animal, we need the attached form filled out by you and your doctor who has provided the prescription for a companion animal. We would typically give you a 3 day notice to comply with this request considering you are currently in breach of your lease, however, given the upcoming holiday, you have until 5pm on Monday 11/30/2015 to provide us with the companion animal documentation. Let me know if you have any questions and I hope you enjoy the holiday.

30. Attached to Neviaser's email were three forms copyrighted by Cullimore: (1) an "Affidavit and Request for Companion Animal" form (hereinafter "Affidavit"); (2) an "Animal Identification Form;" and (3) a "Medical Request for Companion Animal" (hereinafter "Medical Request").

31. Cullimore created, copyrighted, and provided to RU Cliff, LLC, Rize, and their agents the three forms Neviaser sent to Ms. Conlin.

32.     Neviaser's November 24, 2015 email was sent two days before the Thanksgiving holiday. Neviaser's demand was to have the three attached forms completed by the following Monday. In short, Ms. Conlin had less than a week, including the Thanksgiving holiday and the weekend, to provide the requested information. Most importantly, the email did not retract the earlier eviction threat and included a "3 day" warning that clearly referred to the three-day warning typical in eviction proceedings.

33.     The Affidavit attached to the email requires an individual requesting a reasonable accommodation to swear that he or she falls under the Fair Housing Act's definition of "Handicap," to confirm that the "requested companion animal is necessary to provide assistance" with his or her disability, indicate the "anticipated length" of his or her disability, and provide the name and phone number of his or her primary physician. Among other things, the Affidavit also requires an individual swear to the veracity of a confusingly worded "request." A true and correct copy of the Affidavit is attached hereto as Exhibit 1.

34.     The Animal Identification Form—which is different from the "Animal Agreement" Ms. Conlin signed upon leasing her apartment—asks the individual requesting a reasonable accommodation to "[d]escribe any special training or certifications" the animal has, and answer whether "the animal [has] ever been reported to authorities for any incident or for any reason," as well as provide a photo of the animal and copies of proof of vaccination. A true and correct copy of the Animal Identification Form is attached hereto as Exhibit 2.

35.     The Medical Request form describes an emotional support animal[1] as being analogous to a "prescription," and requires, among other things, a medical provider to certify the accuracy of several statements, and agree to testify to the accuracy of those statements in a court of law. A true and correct copy of the Medical Request Form is attached hereto as Exhibit 3.

36.     At the time Defendants provided Ms. Conlin with the forms, Cullimore had already been put on notice that the forms Cullimore created, copyrighted, and provided for use by housing providers, including the Defendants in this action, were impermissibly discriminatory, and had already created new forms which do not use the term "prescription," no longer require a healthcare provider to agree to testify in a court of law, do not ask for a copy of an assistance animal's vaccinations, and indicate that professionals other than a primary care physician can verify an individual's disability. A true and correct copy of Cullimore's revised forms are hereto attached as Exhibit 4.

37.     Upon receipt of the email from Neviaser, Ms. Conlin suffered an extreme increase in anxiety. Not only were there a series of complicated and confusing forms Neviaser claimed Ms. Conlin "needed" to fill out, Ms. Conlin had five days to try to get a letter from her doctor or face either getting rid of Buckley or eviction and financial devastation.

38.     Under extreme duress, Ms. Conlin was able to get a note from her doctor on an extremely expedited basis. Ms. Conlin responded to Neviaser by email on Monday, November 30, 2015, and attached a note from her doctor verifying that she had a disability with symptoms alleviated by an emotional support animal.

---

[1] Emotional support animals are sometimes referred to as "companion" or "comfort" animals. This Complaint generally uses the term "emotional support animal" except when quoting the parties using other analogous terms.

39.     Ms. Conlin did not fill out or return the allegedly required forms. Nevertheless, Neviaser responded the same day, informing Ms. Conlin that Buckley was approved as her emotional support animal for the remainder of her lease.

40.     Ms. Conlin emailed Neviaser back on December 2, 2015 and inquired about the possibility of the return of the previously paid pet deposit and monthly pet rent.

41.     Neviaser emailed Ms. Conlin the same day and told her she could not have her pet deposit or pet rent returned.

42.     Ms. Conlin responded via email on December 3, 2015, requesting confirmation that her pet deposit and pet rent would not be returned, even if she obtained a letter from her healthcare provider that her cat, which she had before Buckley but which had run away, had been an emotional support animal.

43.     Neviaser responded the same day, confirming that Ms. Conlin's request to have her pet deposit and previously paid pet rent refunded was denied.

44.     Upon information and belief, Cullimore knew or should have known that the forms he provided RU Cliff, LLC, Rize, and their agents, including Neviaser, violated the Act, because prior to Defendants transmitting their forms to Ms. Conlin, Cullimore had created and copyrighted new forms and a reasonable accommodation policy under HUD-supervision, a copy of which are attached hereto as Exhibit 4.

## FIRST CLAIM FOR RELIEF
### (Violation of the federal Fair Housing Act—RU Cliff, LLC; Rize; Neviaser)

45.     Ms. Conlin hereby incorporates by reference the allegations in the preceding paragraphs as though fully set forth in this claim for relief.

46. Defendants RU Cliff, LLC, Rize, and Neviaser discriminated against Ms. Conlin, a person with disabilities, when they refused to provide Ms. Conlin with a reasonable amount of time to provide verification of her disability in support of her reasonable accommodation request in violation of the Fair Housing Act, 42 U.S.C.A. §§ 3604(f)(2) and 3604(f)(3)(B).

47. As a result of the Defendants' conduct, Ms. Conlin is an aggrieved person as defined in 42 U.S.C.A. § 3602(i) and has suffered injuries as a result of the Defendants' actions.

48. The Defendants' discriminatory actions were intentional, willful, and taken in disregard of Ms. Conlin's rights.

49. Ms. Conlin is entitled to actual and punitive damages pursuant to 42 U.S.C.A. § 3613(c)(1).

50. Ms. Conlin is also entitled to any further relief based on the foregoing claim that is necessary and proper.

## SECOND CLAIM FOR RELIEF
**(Violation of the federal Fair Housing Act—RU Cliff, LLC; Rize; Neviaser)**

51. Ms. Conlin hereby incorporates by reference the allegations in the preceding paragraphs as though fully set forth in this claim for relief.

52. Defendants RU Cliff, LLC, Rize, and Neviaser discriminated against Ms. Conlin, a person with disabilities, when they conditioned the grant of Ms. Conlin's reasonable accommodation request on her completion and return of purportedly mandatory forms in violation of the Fair Housing Act, 42 U.S.C.A. §§ 3604(f)(2) and 3604(f)(3)(B).

53. As a result of the Defendants' conduct, Ms. Conlin is an aggrieved person as defined in 42 U.S.C.A. § 3602(i) and has suffered injuries as a result of the Defendants' actions.

54.     The Defendants' discriminatory actions were intentional, willful, and taken in disregard of Ms. Conlin's rights.

55.     Ms. Conlin is entitled to actual and punitive damages pursuant to 42 U.S.C.A. § 3613(c)(1).

56.     Ms. Conlin is also entitled to any further relief based on the foregoing claim that is necessary and proper.

### THIRD CLAIM FOR RELIEF
**(Violation of the federal Fair Housing Act—RU Cliff, LLC; Rize; Neviaser)**

57.     Conlin hereby incorporates by reference the allegations in the preceding paragraphs as though fully set forth in this claim for relief.

58.     Defendants RU Cliff, LLC, Rize, and Neviaser discriminated against Ms. Conlin, a person with disabilities by stating that Ms. Conlin was required to complete and return the forms without any subjective belief that she was actually required to do so, in violation of the Fair Housing Act, 42 U.S.C.A. §§ 3604(f)(2) and 3604(f)(3)(B).

59.     As a result of the Defendants' conduct, Ms. Conlin is an aggrieved person as defined in 42 U.S.C.A. § 3602(i) and has suffered injuries as a result of the Defendants' actions.

60.     The Defendants' discriminatory actions were intentional, willful, and taken in disregard of Ms. Conlin's rights.

61.     Ms. Conlin is entitled to actual and punitive damages pursuant to 42 U.S.C.A. § 3613(c)(1).

62.     Ms. Conlin is also entitled to any further relief based on the foregoing claim that is necessary and proper.

## FOURTH CLAIM FOR RELIEF
### (Violation of the federal Fair Housing Act—All Defendants)

63. Ms. Conlin hereby incorporates by reference the allegations in the preceding paragraphs as though fully set forth in this claim for relief.

64. Defendants Cullimore, Rize, Neviaser, and RU Cliff, LLC discriminated against Ms. Conlin, a person with disabilities, by creating and utilizing forms which are impermissibly burdensome and discriminatory in violation of the Fair Housing Act, 42 U.S.C.A. §§ 3604(f)(2) and 3604(f)(3)(B).

65. As a result of the Defendants' conduct, Ms. Conlin is an aggrieved person as defined in 42 U.S.C.A. § 3602(i) and has suffered injuries as a result of the Defendants' actions.

66. The Defendants' discriminatory actions were intentional, willful, and taken in disregard of Ms. Conlin's rights.

67. Ms. Conlin is entitled to actual and punitive damages pursuant to 42 U.S.C.A. § 3613(c)(1).

68. Ms. Conlin is also entitled to any further relief based on the foregoing claim that is necessary and proper.

## FIFTH CLAIM FOR RELIEF
### (Violation of the federal Fair Housing Act—All Defendants)

69. Ms. Conlin hereby incorporates by reference the allegations in the preceding paragraphs as though fully set forth in this claim for relief.

70. Defendants Cullimore, Rize, Neviaser, and RU Cliff, LLC discriminated against Ms. Conlin, a person with disabilities, by creating and requiring forms that require intrusive

amounts of information that is unnecessary to evaluate a request for reasonable accommodation, in violation of the Fair Housing Act, 42 U.S.C.A. §§ 3604(f)(2) and 3604(f)(3)(B).

71.     As a result of the Defendants' conduct, Ms. Conlin is an aggrieved person as defined in 42 U.S.C.A. § 3602(i) and has suffered injuries as a result of the Defendants' actions.

72.     The Defendants' discriminatory actions were intentional, willful, and taken in disregard of Ms. Conlin's rights.

73.     Ms. Conlin is entitled to actual and punitive damages pursuant to 42 U.S.C.A. § 3613(c)(1).

74.     Ms. Conlin is also entitled to any further relief based on the foregoing claim that is necessary and proper.

## SIXTH CLAIM FOR RELIEF
### (Violation of the federal Fair Housing Act—All Defendants)

75.     Ms. Conlin hereby incorporates by reference the allegations in the preceding paragraphs as though fully set forth in this claim for relief.

76.     Defendants Cullimore, Rize, Neviaser, and RU Cliff, LLC discriminated against Ms. Conlin, a person with disabilities, by creating and utilizing forms that contain misleading and inaccurate information regarding reasonable accommodations, in violation of the Fair Housing Act, 42 U.S.C.A. §§ 3604(f)(2) and 3604(f)(3)(B).

77.     As a result of the Defendants' conduct, Ms. Conlin is an aggrieved person as defined in 42 U.S.C.A. § 3602(i) and has suffered injuries as a result of the Defendants' actions.

78.     The Defendants' discriminatory actions were intentional, willful, and taken in disregard of Ms. Conlin's rights.

79.     Ms. Conlin is entitled to actual and punitive damages pursuant to 42 U.S.C.A. § 3613(c)(1).

80.     Ms. Conlin is also entitled to any further relief based on the foregoing claim that is necessary and proper.

### SEVENTH CLAIM FOR RELIEF
**(Violation of the federal Fair Housing Act—RU Cliff, LLC; Rize; Neviaser)**

81.     Ms. Conlin hereby incorporates by reference the allegations in the preceding paragraphs as though fully set forth in this claim for relief.

82.     Defendants RU Cliff, LLC, Rize, and Neviaser discriminated against Ms. Conlin, a person with disabilities, by refusing to return pet rents and pet deposits Ms. Conlin previously paid for her emotional support animal in violation of the Fair Housing Act, 42 U.S.C.A. § 3604(f)(2).

83.     As a result of the Defendants' conduct, Ms. Conlin is an aggrieved person as defined in 42 U.S.C.A. § 3602(i) and has suffered injuries as a result of the Defendants' actions.

84.     The Defendants' discriminatory actions were intentional, willful, and taken in disregard of Ms. Conlin's rights.

85.     Ms. Conlin is entitled to actual and punitive damages pursuant to 42 U.S.C.A. § 3613(c)(1).

### PRAYER FOR RELIEF

WHEREFORE, Ms. Conlin prays for the following relief:

1.     On her First Claim for Relief—Violation of the Fair Housing Act, judgment for:

    a.     Actual and punitive damages in an amount to be proven at trial;

    b.     Prejudgment and post-judgment interest;

14

c.      Costs;

d.      Attorneys' fees; and

e.      For all such other and further relief to which Ms. Conlin may prove to be entitled.

2.      On her Second Claim for Relief—Violation of the Fair Housing Act, judgment for:

a.      Actual and punitive damages in an amount to be proven at trial;

b.      Prejudgment and post-judgment interest;

c.      Costs;

d.      Attorneys' fees; and

e.      For all such other and further relief to which Ms. Conlin may prove to be entitled.

3.      On her Third Claim for Relief—Violation of the Fair Housing Act, judgment for:

a.      Actual and punitive damages in an amount to be proven at trial;

b.      Prejudgment and post-judgment interest;

c.      Costs;

d.      Attorneys' fees; and

e.      For all such other and further relief to which Ms. Conlin may prove to be entitled.

4.      On her Fourth Claim for Relief—Violation of the Fair Housing Act, judgment for:

a.      Actual and punitive damages in an amount to be proven at trial;

b.      Prejudgment and post-judgment interest;

  c.  Costs;

  d.  Attorneys' fees; and

  e.  For all such other and further relief to which Ms. Conlin may prove to be entitled.

5.  On her Fifth Claim for Relief—Violation of the Fair Housing Act, judgment:

  a.  Actual and punitive damages in an amount to be proven at trial;

  b.  Prejudgment and post-judgment interest;

  c.  Costs;

  d.  Attorneys' fees; and

  e.  For all such other and further relief to which Ms. Conlin may prove to be entitled.

6.  On her Sixth Claim for Relief—Violation of the Fair Housing Act, judgment:

  a.  Actual and punitive damages in an amount to be proven at trial;

  b.  Prejudgment and post-judgment interest;

  c.  Costs;

  d.  Attorneys' fees; and

  e.  For all such other and further relief to which Ms. Conlin may prove to be entitled.

7.  On her Seventh Claim for Relief— Violation of the Fair Housing Act, judgment:

  a.  Actual and punitive damages in an amount to be proven at trial;

  b.  Prejudgment and post-judgment interest;

  c.  Costs;

     d.       Attorneys' fees; and

     e.       For all such other and further relief to which Ms. Conlin may prove to be entitled.

## JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Ms. Conlin hereby demands trial by jury of all claims and issues in this action so triable.

DATED: November 20, 2017.

MORRIS SPERRY

/s/ *John D. Morris*
John D. Morris
Lauren DeVoe
*Attorneys for Plaintiff Kaylee Conlin*

<u>Plaintiff's Address</u>:
Kaylee Conlin
c/o Morris Sperry
7070 South Union Park Center, Suite 220
Midvale, Utah 84047

# EXHIBIT 1

# Affidavit and Request for Companion Animal

***The undersigned does hereby request a companion animal and does hereby swear and state as follows:***

**1. Handicap Definition**  I am aware of the requirements of the Fair Housing Act and its definitions which include:

*"Handicap" means, with respect to a person –*
*(1) a physical or mental impairment which substantially limits one or more of such person's major life activities,*
*(2) a record of having such an impairment, or*
*(3) being regarded as having such an impairment, but such term does not include current, illegal use of or addiction to a controlled substance.*

**2. Qualification**  Pursuant to the definition above, I do qualify and am or have been under the care of a medical professional for my disability; or have been so diagnosed with a permanent disability to no longer require medical supervision

**3. Impairment**  I represent that the requested companion animal is necessary to provide assistance with my disability.

The anticipated length of this disability is _____.

My primary care physician is Dr._____ whose telephone number is _____.

**4. Request**  I do hereby request that I be able to reside with a companion animal at the premises below. I certify that the statements herein are true and have provided herewith an Animal Identification Form and a Medical Request for a Companion Animal. I agree that the only animal I will keep for this purpose is listed therein and that I will abide by the rules and regulations of the community regarding animals. I understand that I will not have to pay additional costs or fees for the companion animal but will be responsible for any damage caused. I request that my medical professional confirmation of required information to my housing provider to assist in making this determination.

Applicant's Name _____

Premises Address _____

_____

Dated _____          _____
                                                                        Signature of Applicant

 © The Law Offices of Kirk A. Cullimore 10/2014 This form may not be reproduced without express written permission.

# EXHIBIT 2

# <u>Animal Identification Form</u>

Type of animal _____   Breed _____

Age _____   Approximate Weight _____   Color _____

Describe any special training or certifications _____

_____

Veterinarian Name _____   Phone# _____

License number from local authorities _____

Is the animal current on its shots and vaccinations as suggested by its veterinarian? _____

Has the animal ever been reported to authorities (police, animal control) for any incident or for any reason? _____   If yes, please provide details.

_____

**Animals may not be in the common areas of the community unless on a leash or an approved device based upon the animal's certification.**

**Animals may be restricted from specific areas.**

**The animal's owners are responsible for cleaning up after the animal and for any damage done by the animal.**

**Animals may not disturb the peaceful and quiet enjoyment of the other tenants.**

**The Community may have other regulations and rules relating to animals.**

I have read the rules and regulations concerning animals (both above and those policies of the community), and agree to their terms.


_____        _____

Resident's signature                            Dated

*Please provide a photo of the animal and copies of proof of vaccination.*

 © The Law Offices of Kirk A. Cullimore 10/2014 This form may not be reproduced without express written permission.

# EXHIBIT 3

# Medical Request for Companion Animal

Name of Person making Request _____

A request has been made to allow a companion animal to reside with the above named individual. Such request has been made pursuant to the Fair Housing Act. In order to qualify for a companion animal exemption to the normal rules of the community, the person making the request **must qualify as handicapped as defined**, which is:

> *"Handicap" means, with respect to a person –*
> *(1) a physical or mental impairment which substantially limits one or more of such person's major life activities,*
> *(2) a record of having such an impairment, or*
> *(3) being regarded as having such an impairment, but such term does not include current, illegal use of or addiction to a controlled substance.*

> *Additionally, the companion animal must assist the person in dealing with the disability.*

**Much like a prescription, this request is made because of the medical provider's opinion that the companion animal may be necessary to afford the disabled person an equal opportunity to use and enjoy the leased premises. With this request and upon approval, the management of the premises must allow the animal on the premises and may be prohibited from charging normal pet rent or other fees normally charged to persons with pets. Companion animals are not pets but animals that are determined by competent professionals to be an important and necessary part of treatment or assistance of a disability/handicap.**

Doctor's Name: _____ Telephone number: _____

*I certify that I have sufficient information and have consulted with the Patient in order to make a diagnosis. I certify that the above named person is handicapped as defined above and that the animal described below is, in my professional opinion, necessary to afford an equal opportunity to use and enjoy the leased premises. I agree that I will be willing to testify of these representations if called upon in a Court of law.*

Prescribed Animal's Description _____

Expiration Date of this Certification _____

_____        _____
Date                                            Physician's Signature

 © The Law Offices of Kirk A. Cullimore 10/2014 This form may not be reproduced without express written permission.

# EXHIBIT 4

***These Instructions are for instructional purposes only, and should not be given to a resident as part of the Assistance Animal request packet.**

# Assistance Animal Forms Instructions

Please read and review before use of these forms.

1. Remember that neither HUD nor the State of Utah has "approved" the forms. Usage always has some risk. Also, every case is independent and should be reviewed on its merits and facts.
2. These forms are for any Assistance Animal wherein the need for the animal is not readily apparent. Service animals where the need is apparent need not use this form but should still provide the information on the Animal Identification Form.
3. You can require the information on the animal and ask that the Resident affirm their request for the Assistance Animal.
4. Give them the Health Care Professional's Verification for Assistance Animal form as a guide. If the professional does not want to sign it and provides substantially the same information in another format, it must be accepted. Remember to review your policy on who can provide this information.
5. If the Resident provides any documentation from a professional or other qualified person, it should be reviewed to make sure it provides sufficient information to confirm the status and nexus. If not, an attempt to get verification of the information needed directly from the person who signed the form should be first attempted.
6. A HIPAA FORM IS NOT REQUIRED. Many health care professionals will not discuss the patient without the HIPAA form. **Verification does not require the HIPAA form.** Explain to the health care professional that you are merely verifying the information that has already been provided. If you are unable to verify, you should inform the Resident of the problem to see if they can get the health care professional to provide the verification. Seek assistance from legal counsel and/or your regional manager in this circumstance.
7. It is the intent of these forms to gather sufficient information and verify that information to determine if a reasonable accommodation should be granted or not.
8. Failure to provide sufficient information may be grounds for denial. Sufficient information would include: a description of the animal, verification from someone that the Resident meets the definition of disabled and that there is a nexus between the disability and the need for the animal, and the other information contained on the Animal Identification Form.
9. **All communities should have animal rules. Persons who obtain an animal by reasonable accommodation generally must abide by those rules (excepting breed restrictions and size & weight restrictions). Those rules should be given to residents with animals.**
10. These forms should not be given out unless someone has filled out an application and is actually attempting to rent.
11. Questions on Assistance Animals from _prospective_ residents should be answered:
    *This Community fully complies with the Fair Housing laws as it applies to disabilities. Persons who desire an accommodation must convey that request to management, who will then attempt to obtain sufficient verified information to determine if the request can be granted and how it can be accommodated. Since every situation is different, each situation is treated separately. It is impossible to give a blanket answer on questions of accommodation. If a prospective tenant desires to apply, we will then accept any request and make a full review to see if it can be accommodated.*
12. If you have any questions on a request, contact legal counsel.
13. If you think someone is testing your community on reasonable accommodation, contact your regional manager/owner and contact legal counsel.

 © The Law Offices of Kirk A. Cullimore 3/2015 This form may not be reproduced without express written permission.

# Resident's Request for Assistance Animal

***The undersigned does hereby request as assistance animal and does hereby attest and state as follows:***

**1. Handicap Definition**   I am aware of the requirements of the Fair Housing Act and its definitions which include:
*"Handicap" means, with respect to a person –*
*(1) having a physical or mental impairment which substantially limits one or more of such person's major life activities,*
*(2) having a record of having such an impairment, or*
*(3) being regarded as having such an impairment, but such term does not include current, illegal use of or addiction to a controlled substance.*

**2. Qualification**   Pursuant to the definition above, I do qualify as an individual with a disability.

**3. Impairment**   I represent that the requested assistance animal is necessary to provide assistance with my disability.

The anticipated length of this disability is _____.

My primary care physician is Dr._____ whose telephone number is _____.

**4. Request**   I do hereby request that I be able to reside with an assistance animal at the premises below. I certify that the statements herein are true as provided on the Animal Identification Form and the Medical Request for an Assistance Animal. I agree that the only animal I will keep for this purpose is listed therein and that I will abide by the rules and regulations of the community regarding animals. I understand that I will not have to pay additional costs or fees for the assistance animal but will be responsible for any damage caused. I request that my professional provide verification of the required information to my housing provider to assist in making this determination.

Applicant's Name _____

Premises Address _____

_____

Dated _____     _____
                                                                           Signature of Applicant


© The Law Offices of Kirk A. Cullimore 3/2015 This form may not be reproduced without express written permission.

# Animal Identification Form

Type of animal _____     Breed _____

Age _____     Approximate Weight _____          Color _____

Describe any special training or certifications _____

_____

Has the animal ever been reported to authorities (police, animal control) for any incident or for any reason? _____.   If yes, please provide details.

_____

**Animals may not be in the common areas of the community unless on a leash or an**
**approved device based upon the animal's certification.**

**Animals may be restricted from specific areas.**

**The animal's owners are responsible for cleaning up after the animal and for any damage**
**done by the animal.**

**Animals may not disturb the peaceful and quiet enjoyment of the other tenants.**

**The Community may have other regulations and rules relating to animals.**

**I affirm that the animal is in compliance with all state and local laws concerning animals.**

I have read the rules and regulations concerning animals (both above and those policies of the community), and agree to their terms.

_____          _____

Resident's signature                                   Dated

*Please provide a photo of the animal.*



© The Law Offices of Kirk A. Cullimore 3/2015 This form may not be reproduced without express written permission.

# Health Care Professional's Verification for Assistance Animal

Name of Person making Request _____

A request has been made to allow an assistance animal to reside with the above named individual. Such request has been made pursuant to The Fair Housing Act. In order to qualify for an assistance animal exemption to the normal rules of the community, the person making the request **must qualify as handicapped as defined**, which is:

*"Handicap" means, with respect to a person* –
*(1) having a physical or mental impairment which substantially limits one or more of such person's major life activities,*
*(2) having a record of having such an impairment, or*
*(3) being regarded as having such an impairment, but such term does not include current, illegal use of or addiction to a controlled substance.*

*Additionally, the assistance animal must assist the person in ameliorating the disability and/or the major life activities effected.*

**Much like a prescription, this request is made because of the professional's opinion that the assistance animal may be necessary to afford the disabled person an equal opportunity to use and enjoy the leased premises. With this request and upon approval, the management of the premises must allow the animal on the premises and is prohibited from charging pet rent or other fees normally charged to persons with pets. Assistance animals are not pets but animals that are determined by competent professionals to be an important and necessary part of treatment or assistance of a disability/handicap.**

Professional's Name: _____    Telephone number: _____

*I certify that I have sufficient information and have consulted with the person making this request in order to make this determination. I certify that the above named person is handicapped as defined above and that the animal described below is, in my professional opinion, necessary to afford an equal opportunity to use and enjoy the leased premises.*

Prescribed Animal's Description _____

Expiration Date of this Certification _____

_____                          _____
Date                                              *Signature of* Medical Provider,
                                                  Health or Social Service Professional


© The Law Offices of Kirk A. Cullimore 3/2015 This form may not be reproduced without express written permission.