**PARSONS BEHLE & LATIMER**
John A. Snow (3125) (jsnow@parsonsbehle.com)
Alex B. Leeman (12578) (aleeman@parsonsbehle.com)
201 S. Main Street, Ste. 1800
Salt Lake City, UT 84111
Telephone: 801.532.1234

*Attorney for the Cullimore Defendants*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **KAYLEE CONLIN**, <br><br> Plaintiff, <br><br> vs. <br><br> **RU CLIFF, LLC**, et al., <br><br> Defendants. | **CULLIMORE DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT** <br><br> Case No. 2:17-cv-01213-TC-DBP <br><br> Judge Tena Campbell <br> Magistrate Judge Dustin B. Pead |

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and DUCivR 56-1,

Defendants Law Office of Kirk A. Cullimore, LLC ("**Law Office**"), and Kirk A. Cullimore

("**Cullimore**") (collectively, the "**Cullimore Defendants**"), hereby move the Court for summary

judgment in their favor and against Plaintiff Kaylee Conlin ("**Conlin**") on all claims asserted

against them in the Amended Complaint filed in this action.

### INTRODUCTION AND RELIEF SOUGHT

The Cullimore Defendants seek summary judgment and dismissal with prejudice of all

Conlin's Claims for Relief, each of which asserts that the Cullimore Defendants are liable for

violations of the Fair Housing Act (FHA). In her Amended Complaint, Conlin raises seven

1

claims against the Cullimore Defendants, each related to legal services the Cullimore Defendants provided to Conlin's landlord. Amended Complaint, pp. 13-19.

The Cullimore Defendants are entitled to summary judgment on Conlin's claims for three reasons. First, all of Conlin's claims fail as a matter of law because the Cullimore Defendants' legal services for the landlord did not cause harm Conlin. Although the Cullimore Defendants drafted the animal accommodation forms that Conlin's landlord provided to her, the Cullimore Defendants had previously advised the landlord not to use those outdated forms. Additionally, to the extent Conlin was harmed by the landlord's threat of conviction, that harm was not caused by the Cullimore Defendants because they were not consulted regarding the matter yet, and did not direct the landlord to threaten eviction.  In addition, neither the Cullimore Defendants nor the landlord were aware of Conlin's claimed disability at the time of the threat.

Second, even if the Cullimore Defendants' services caused harm to Conlin, Conlin's claims still fail as a matter of law because the FHA should not apply to legal services provided to a landlord.[1] The purpose of the FHA's services provisions is to assure protected individuals receive all essential services for obtaining and enjoying a home in a non-discriminatory manner. Legal services provided to a landlord fall outside of that scope.

Finally, Conlin's claims regarding the Lease fail because the terms of the Lease are not discriminatory. Each relevant provision applies to all residents equally and does not confer or deny privileges to any particular class of people.

---

[1] The Cullimore Defendants, pursuant to Fed. R. Civ. P. 54(b), request that the Court reconsider or revise its Memorandum Decision dated November 6, 2019, ("**Order**") on this point.

4834-7174-8014v3

For these reasons, the Cullimore Defendants ask the Court to dismiss all Conlin's claims with prejudice.

## BACKGROUND

This case primarily concerns a dispute between Conlin and her apartment complex, which was owned by RU Cliff, LLC ("**RU Cliff**") and managed by Rize Homesource, LLC ("**Rize**"). Jon Neviaser ("**Neviaser**") was Rize's agent in dealing directly with Conlin. RU Cliff, Rize, and Neviaser are collectively referred to herein as the "**Landlord Defendants**."

Conlin's dispute with the Landlord Defendants concerned Buckley, a Great Dane that Conlin began keeping in her apartment without first notifying the Landlord Defendants. When Buckley was discovered, the Landlord Defendants informed Conlin—without the Cullimore Defendants' knowledge or involvement—that she would be evicted for having an unauthorized animal in her apartment, in violation of the "Residential Rental Agreement" between Conlin and the Landlord Defendants (the "**Lease**"). Only *after* Conlin learned that she might be evicted did she assert, for the first time, that she had a handicap and that Buckley was a companion animal who helped with her handicap. The Landlord Defendants responded to the assertion by sending Conlin several forms originally drafted by Cullimore Defendants several years earlier (the "**Old Forms**"), for use in approving companion animals.

Conlin declined to fill out the Old Forms, but later provided a note from her doctor confirming that she needed a companion animal.  Based on the note, the Landlord Defendants informed Conlin that she would not be evicted and that she could keep Buckley in the residence as a companion animal.

The Cullimore Defendants were legal counsel for the Landlord Defendants. The Cullimore Defendants drafted the Old Forms that Landlord Defendants provided to Conlin. They also drafted the Lease and provided general legal advice to the Landlord Defendants in their subsequent dealings with Conlin. Conlin has settled her claims with the Landlord Defendants and now maintains only claims against the Cullimore Defendants related to the legal services they provided to the Landlord Defendants.

## **STATEMENT OF UNDISPUTED MATERIAL FACTS**

1.      The Law Office is a law firm located in Draper, Utah. Deposition of Kirk A. Cullimore, at 4:14-16, copy attached as **Exhibit 1**.

2.      Cullimore is a practicing attorney and owner of the Law Office, and is the person responsible for the work product produced by the Law Office. **Exhibit 1**, 8:24-9:18; 17:11-14.

3.      In 2012, Cullimore created the Old Forms, which consist of (1) an "Affidavit and Request for Companion Animal" form, (2) an "Animal Identification Form," and (3) a "Medical Request for Companion Animal" form. **Exhibit 1**, 103:2-7; Affidavit and Request for Companion Animal, copy attached as **Exhibit 2**; Animal Identification Form, copy attached as **Exhibit 3**; Medical Request for Companion Animal, copy attached as **Exhibit 4**.

4.      On or about June 16, 2015, Conlin and Rize entered into the Lease for the rental of a unit at Cliffside Apartments. Lease, copy attached as **Exhibit 5**.

5.      The Lease provides, in general, that a resident "may not keep, allow, or maintain animals of any kind on or near the premises for any length of time without the prior written consent" of Rize. **Exhibit 5**, p. 6.

4

6.      The Lease provides multiple remedies for violating this prohibition, including permitting the landlord to charge "of $50 per day, per violation" and to "commence eviction on the basis of nuisance without any further notice or opportunity to cure." **Exhibit 5,** p. 6.

7.      The Lease also instructs residents to "notify" Rize "of any need relating to a disability or handicap (in writing if possible) to insure the proper procedures are implemented to comply with existing laws." **Exhibit 5**, p. 4.

8.      Consistent with this provision, a resident must obtain prior approval for a support or comfort animal. **Exhibit 5**, p. 6. If a resident fails to do so, the landlord may evict the resident—as is the case for failing to obtain prior approval for any other animal. **Exhibit 5**, p. 6.

9.      When she signed the Lease, Conlin did not make any requests for any accommodations related to a disability or other condition. Deposition of Kaylee Conlin, at 30:18-31:7, 44:15-18, copy attached as **Exhibit 6**.

10.     Conlin obtained Buckley, a nine-week old Great Dane puppy, in "[l]ate September, beginning of October" of 2015. **Exhibit 6**, 44:22-45:2.

11.     Prior to obtaining Buckley, Conlin never had any discussions with any medical professional about obtaining a companion animal to help with anxiety. **Exhibit 6**, 31:8-11, 104:19-105:4.

12.     At the time Conlin obtained Buckley, she did not notify the Landlord Defendants that she had obtained him. **Exhibit 6**, 45:23-46:7.

13.     On or about November 20, 2015, Neviaser, Rize's agent, spoke with Conlin by phone. He told her that having Buckley in her apartment was a breach of the Lease, and that she would need to either get rid of Buckley or "vacate the premises…." **Exhibit 6**, 79:6-80:22.

14.     Three days later, on November 23, 2015, Conlin sent Neviaser an email in which she stated, among other things, "I suffer from anxiety issues, that have been far less severe since I obtained Buckley," "my anxiety increased significantly until I found Buckley," and "I believe that Buckley qualifies as a 'comfort animal' under the protection of the Fair Housing Act. By this email, I am requesting an accommodation from the terms of my lease and any apartment rules to keep Buckley throughout the term of my lease…." **Exhibit 6**, 111:11-18; November 23 Email, pp. 1-2, copy attached as **Exhibit 7**

15.     Conlin's November 23 email was the first communication in which she had ever informed the Landlord Defendants that she suffered from anxiety. **Exhibit 6**, 111:11-18.

16.     On November 24, 2015, Neviaser responded to Conlin's November 23 email with an email in which, among other things, he acknowledged Conlin's "request to keep Buckley as a companion animal." November 24 Email, p. 2, copy attached as **Exhibit 8**.

17.     Neviaser attached the Old Forms to his November 24 email and requested that Conlin fill out and return the Old Forms no later than November 30, 2015. *See* **Exhibit 8**, p. 2.

18.     The Old Forms were created by the Cullimore Defendants to assist clients with processing assistance animal requests. Declaration of Kirk A. Cullimore, at ¶¶ 9-10, copy attached as **Exhibit 9.**

19.     In April 2015, the Cullimore Defendants created new assistance animal application forms ("**New Forms**") to replace the Old Forms.  These New Forms were created during the course of negotiations with the U.S. Department of Housing and Urban Development ("HUD") related to a dispute over the processing of assistance animal requests. Those

negotiations resulted in conciliation agreements that resolved the disputes. <u>Declaration of Kirk A. Cullimore</u>, at ¶ 10, copy attached as **Exhibit 9.**

20.     As part of the resolution, Cullimore Defendants removed the Old Forms from their secured website in October 2014 and published and posted the New Forms in April 2015. **Exhibit 9**, at ¶ 11.

21.     Any time the Cullimore Defendants meet with their clients—including the Landlord Defendants—for training, they reminded the clients to always use the current forms on the website, as the forms are periodically updated to comply with the law. **Exhibit 9**, at ¶ 8.

22.     After creating the New Forms, Cullimore Defendants also sent out an e-mail and a newsletter to every client—including Landlord Defendants—informing them about the New Forms and specifically directing them to use the New Forms, not the Old Forms. **Exhibit 9**, at ¶ 12**.**

23.     Neviaser disregarded the Cullimore Defendants' advice and provided the outdated Old Forms to Conlin. **Exhibit 9**, ¶ 14.

24.     On November 30, 2015, at 10:45 a.m., Conlin responded to Neviaser's November 24 email with an email to which she attached a note from her physician, Dr. Tyler Carroll. <u>November 30, 10:45 a.m. Email</u>, copy attached as **Exhibit 10**; <u>Carroll Letter</u>, copy attached as **Exhibit 11**.

25.     Dr. Carroll's note stated that Conlin "suffers from anxiety" and "keeps a pet which helps her emotionally and should be considered a comfort animal. Please allow her to maintain pet [sic] in her apartment." **Exhibit 10**.

4834-7174-8014v3

26.     On November 30, 2015, at 3:43 p.m., Neviaser responded to Conlin's November 30 email with an email in which he stated that "Buckley is approved as your companion animal while you reside at Cliffside." November 30, 3:43 p.m. Email, copy attached as **Exhibit 12**.

27.     The Cullimore Defendants did not provide any legal advice to the Landlord Defendants regarding Conlin until *after* her request for a reasonable accommodation had been granted. **Exhibit 9**, ¶ 16.

28.     In fact the Cullimore Defendants were completely unaware of the situation with Conlin until after it was resolved. **Exhibit 9**, at ¶ 15.

## ARGUMENT

"Plaintiffs who allege a violation of 42 U.S.C. § 3604(f) may proceed under any or all of three theories: disparate treatment, disparate impact, and failure to make reasonable accommodations." *Anderson v. City of Blue Ash*, 798 F.3d 338, 360 (6th Cir. 2015) (quoting *Smith & Lee Assocs. v. City of Taylor, Mich.*, 102 F.3d 781, 790 (6th Cir. 1996)). The Court previously dismissed any claims relying on a theory of reasonable accommodation of disparate impact. *See* Order at 8-11. Conlin's claims under the theory of disparate treatment must likewise fail because the Cullimore Defendants did not cause any harm alleged by Conlin. Conlin's claims should also be dismissed because legal services provided to a landlord should not be subject to the FHA. Finally, Conlin's claims related to the Lease must be dismiss because the document is not discriminatory.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

I.    **THE CULLIMORE DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON ALL CLAIMS BECAUSE THEY DID NOT CAUSE ANY HARM SUFFERED BY CONLIN.**

Conlin alleges she was harmed by the Cullimore Defendants because "she suffered emotional distress when she was threatened with eviction, faced potential financial hardship, and was given a short turnaround time" to complete the Old Forms. *See* Order at 12. Conlin's claims fail because the Cullimore Defendants did not cause any of the alleged distress she claims.

A protected individual may bring an FHA claim based on emotional distress if the distress "exceeds the normal transient and trivial aggravation attendant to securing suitable housing." *Morgan v. Sec'y of Housing & Urban Dev.*, 985 F.2d 1451, 1459 (10th Cir. 1993). However, FHA claims are "subject to the common-law requirement that loss is attributable to the proximate cause, and not to any remote cause." *Bank of Am. Corp. v. City of Miami*, 137 S. Ct. 1296, 1299 (2017) (internal citation and quotation marks omitted). To demonstrate probable cause, the claimant must demonstrate not only that the harm was a foreseeable result of the alleged conduct, but also that there was "some direct relation between the injury asserted and the injurious conduct alleged." *Id.* In this case, whatever emotional harm Conlin may have suffered from the Landlord Defendants' actions was not foreseeably caused by any act or alleged FHA violation by the Cullimore Defendants.

The threat of eviction that triggered Conlin's emotional distress could not have been caused by the Cullimore Defendants. The Cullimore Defendants did not direct the Landlord Defendants to threaten eviction, nor were they even aware of Conlin's existence until after she had been granted a reasonable accommodation by the Landlord Defendants. **Exhibit 9, ¶¶** 15-16. Thus, Conlin's emotional distress from the initial threat of conviction cannot be proximately

caused by the alleged actions of Cullimore Defendants.  Moreover, at the time Conlin was threatened with eviction, she had not yet claimed any handicap. The Landlord Defendants threatened to evict Conlin three days *before* she informed them that she had a handicap and that Buckley was a support animal needed to assist her with that handicap. **Exhibit 6**, 79:6-80:22; **Exhibit 7,** pp. 1-2. Without knowledge of Conlin's handicap, the Landlord Defendants and the Cullimore Defendants were incapable of discriminating against her based on that handicap, which is the prerequisite for any FHA claim. *See* 42 U.S.C. § 3604(f) (prohibiting discrimination "because of a handicap").

Nor was it foreseeable that Conlin would be harmed by being presented with the Old Forms.[2] Over a year before the Landlord Defendants gave the Old Forms to Conlin, the Cullimore Defendants removed the Old Forms from their secured website. **Exhibit 9**, at ¶ 11. In April 2015, the Cullimore Defendants posted the New Forms, which were approved through the HUD conciliation process, on the secured website. **Exhibit 9**, at ¶ 11; *see also* Conciliation Agreements, ¶ 18, attached as Exhibit D to the Cullimore Decl. The Cullimore Defendants specifically advised the Landlord Defendants (and all clients) on multiple occasions to only use the current forms available on the secured website, because the forms were frequently updated to comply with the law. **Exhibit 9**, at ¶ 8. The Cullimore Defendants also specifically advised the Landlord Defendants to use the New Forms instead of the outdated Old Forms. **Exhibit 9**, ¶¶ 12-13.

---

[2] In the Order, the Court indicated that the Cullimore Defendants should have reasonably foreseen that their forms would come into the hands of Ms. Conlin.  *See* Order, p.15.  However, in the prior summary judgment motion, the Court was not presented with evidence that Conlin was given Old Forms that had been superseded by the New Forms and given to Conlin against the Cullimore Defendants' express instructions.

Because the Cullimore Defendants expressly advised the Landlord Defendants not to use the outdated Old Forms, it was not foreseeable that the Landlord Defendants would provide these forms to Conlin in November 2015 and cause distress to her. And the Landlord Defendants' actions were certainly not caused by the Cullimore Defendants' legal advice, as the Cullimore Defendants specifically instructed the Landlord Defendants not to do what they did. The Landlord Defendants' unilateral decision to disregard the Cullimore Defendants' legal advice and use the outdated Old Forms broke any possible chain of causation back to the Cullimore Defendants. It would be unjust and incorrect, as a matter of law, to hold the Cullimore Defendants liable for harm to Conlin based on the Landlord Defendants' decision to ignore Cullimore's specific instructions and legal advice.

Finally, Conlin has not been harmed by the "campaigns" the Cullimore Defendants allegedly engaged in advising their clients to verify reasonable accommodation requests with healthcare providers.[3] Conlin has not been denied any reasonable accommodations based on the Cullimore Defendants' "campaigns." Order at 9-10. There is no evidence that anyone called Conlin's healthcare providers or tried to evade the FHA as a result of the "campaigns." There is

---

[3] Abundant case law confirms that housing providers are authorized by law to contact healthcare providers to verify "that the disabled person needs the assistance of a service animal." *Prindable v. Assoc. of Apartment Owners of 2987 Kalakaua*, 304 F. Supp. 2d 1245, 1259 (D. Haw. 2003), *aff'd sub nom. Dubois v. Assoc. of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175 (9th Cir. 2006). Indeed, HUD has declared that "in response to a request for a reasonable accommodation, a housing provider may request reliable disability-related information that (1) is necessary to verify that the person meets the [FHA's] definition of disability . . . , (2) describes the needed accommodation, and (3) shows the relationship between the person's disability and the need for the requested accommodation. Joint Statement of HUD & DOJ, Reasonable Accommodations Under the Fair Hous. Act, May 17, 2004, p. 13, https://www.hud.gov/sites/dfiles/FHEO/documents/huddojstatement.pdf, last visited Dec. 5, 2019.

also no evidence that the Landlord Defendants relied on any information provided as part of the "campaigns" in dealing with Conlin. After all, the Landlord Defendants granted Conlin's request for a reasonable accommodation within a week of being alerted to Conlin's disability, without contacting a healthcare provider. **Exhibit 7**, pp. 1-2; **Exhibit 12**. Accordingly, any emotional harm Conlin experienced was not the result of the alleged "campaigns." The Cullimore Defendants are entitled to summary judgment on all Conlin's claims.

## II.   THE CULLIMORE DEFENDANTS ARE ALSO ENTITLED TO SUMMARY JUDGMENT AS TO EACH CLAIM BECAUSE LEGAL SERVICES ARE NOT "SERVICES" GOVERNED BY THE FAIR HOUSING ACT.

In the Order, the Court concluded that the Cullimore Defendants are within the scope of the FHA because they provide services in connection with housing. *See* Order, pp. 13-14. The Cullimore Defendants respectfully request that the Court revise or reconsider this conclusion.

The FHA assures that essential housing services are provided in a non-discriminatory manner to any protected tenant or home buyer. The Act prohibits discrimination "in the provision of services or facilities in connection with [a] dwelling." 42 U.S.C. 3604(f)(2). The prohibition is "directed at those who provide housing and then discriminate in *the provision of attendant services or facilities*, or those who otherwise control *the provision of housing services and facilities*." *Clifton Terrace Assocs., Ltd. v. United Techs. Corp.*, 929 F.2d 714, 720 (D.C. Cir. 1991) (emphasis added). In other words, courts should ask whether the protected tenants receive—in a non-discriminatory manner—the essential services and facilities they need to live in the dwelling. *See Mackey v. Nationwide Ins. Companies*, 724 F.2d 419, 424 (4th Cir. 1984) (concluding the FHA's "services" provisions "encompass[] such things as garbage collection and other services of the kind usually provided by municipalities"); *Southend Neighborhood Imp.*

*Ass'n v. St. Clair Cty.*, 743 F.2d 1207, 1210 (7th Cir. 1984) (concluding that the "services"

provisions "appl[y] to services generally provided by governmental units such as police and fire

protection or garbage collection"). Legal services to a landlord do not fall within this scope.

This interpretation is consistent with HUD regulations, which state that it is a violation of

the FHA to "[r]efus[e] to provide municipal services or property or hazard insurance for

dwellings or [to] provid[e] such services or insurance differently because of race, color, religion,

sex, handicap, familial status, or national origin." 24 C.F.R. § 100.70(d)(4); *see also N.A.A.C.P.*

*v. Am. Family Mut. Ins. Co.*, 978 F.2d 287, 301 (7th Cir. 1992) (upholding HUD's interpretation

of the FHA's services provision as applying to property and hazard insurance in addition to

municipal services); *Nat'l Fair Hous. All., Inc. v. Prudential Ins. Co. of Am.*, 208 F. Supp. 2d 46,

57 (D.D.C. 2002) (same). Again, the regulations ask whether the protected <u>tenant</u> has received

essential services—such as property insurance and the services provided by municipalities—in a

non-discriminatory manner. Legal services are neither municipal services nor insurance, nor are

they provided to the tenant, and are thus not covered by the FHA.

Here, Conlin does not allege that the Cullimore Defendants provided her with

substandard services because of her handicap. Instead, Conlin asserts that the Cullimore

Defendants discriminated against her in providing legal services to the Landlord Defendants.

Legal services to a landlord do not fall within the scope of "essential services" to a tenant

associated with housing. If the FHA applied to such legal services, it would create an

impermissible conflict in the attorney's duties under the rules of professional conduct. *See* Utah

R. Prof. Cond. 1.7. As discussed at length in prior briefing, attorneys do owe duties to anyone

other than their client in the provision of legal services. *See Sanzaro v. Ardiente Homeowners*

*Ass'n, LLC*, No. 2:11–cv–01143–RFB–CWH, 2017 WL 5895133, at *11 (D. Nev. Nov. 29, 2017) ("[A]n attorney's duty lies solely with the client and does not extend to any other third party.") (quoting *Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192, 1198 (9th Cir. 2001)). If legal services provided to a landlord were also subject to the FHA, a landlord's attorneys would have a mandatory duty to any tenant protected by the FHA (or risk that legal advice could spur a lawsuit against the attorney from the tenant). Consequently, the representation of the landlord would be "materially limited by the lawyer's responsibilities to . . . a third person or by a personal interest of the lawyer." *See* Utah R. Prof. Cond. 1.7(a)(2). Paradoxically, the landlord's attorneys would nevertheless be prohibited from providing the legal services "differently because of [the tenant's] handicap." *See* 24 C.F.R. § 100.70(d)(4). And attorneys would likewise be prohibited from refusing to represent the landlord to avoid these problems, as such a refusal would itself be based on the tenant's handicap (which is what imposed the new duty upon the landlord's attorney in the first place). *Id.* This impossible bind is inconsistent with the purpose of the FHA. Consequently, when legal services are provided only to a landlord, the FHA should not apply to legal services or bring the attorney within the scope of the FHA.

The FHA's purpose of assuring that tenants are provided with all of the necessary services associated with a home should not be applied to interfere with legal services provided by the Cullimore Defendants to their clients. Accordingly, the Cullimore Defendants are entitled to summary judgment as a matter of law on all of Conlin's claims.

4834-7174-8014v3

III.   **THE CULLIMORE DEFENDANTS ARE ALSO ENTITLED TO SUMMARY JUDGMENT ON THE CLAIMS REGARDING THE LEASE BECAUSE THE LEASE IS NOT DISCRIMINATORY.**

Conlin's First, Fourth, and Fifth Claims revolve around provisions in the Lease that Conlin alleges are discriminatory. The Lease is discriminatory if it "confers privileges on a certain class or that denies privileges to a certain class because of race, age, sex, nationality, religion, or disability." DISCRIMINATION, Black's Law Dictionary (11th ed. 2019). None of the provisions in the Lease are discriminatory in any manner.

Conlin asserts that "[u]nder the Lease, an animal kept in a Cliffside unit without prior written consent of the . . . could result in a fine levied against the lessee of $50.00 per day. However, the Lease provides that 'any companion or service animal' kept in a Cliffside unit without 'PRIOR' approval is 'a significant violation' of the Lease 'which shall allow for immediate eviction.'" Amended Complaint at 24-25. This false dichotomy blatantly ignores the remaining provisions of the Lease.  The Lease authorizes eviction based on the lack of prior approval for *any* animal—and not just for support animals.  Specifically, the Lease authorizes the landlord to "commence eviction on the basis of nuisance without any further notice or opportunity to cure" for any animal kept in a Cliffside unit without prior written consent. **Exhibit 5**, p. 6. Consequently, it is not discriminatory.

Moreover, it is reasonable and lawful to require residents to inform the landlord prior to bringing a support animal on the premises.[4] Prior approval allows the landlord "to insure the proper procedures are implemented to comply with existing laws." **Exhibit 5**, p. 5. It also allows

---

[4] After all, a resident must request a reasonable accommodation—including the assistance of a support animal—before a landlord is required to provide one. *See* 42 U.S.C. 3604(f)(3)(B).

4834-7174-8014v3

the landlord to ensure that the residence is prepared for the service animal—to assure that the residence is pet-proofed for the protection of both the animal, the property, and other residents.

Conlin next alleges that the Lease is discriminatory because it provides the landlord with attorneys' fees if a tenant brings an unsuccessful claim against the landlord. In full, the relevant provision states that "[i]n the event Resident brings a claim against Owner or its agents with a state or federal agency, Owner shall be entitled to recover as against Resident any attorney fees and/or costs and damages for its time (including an hourly rate for Owner or its agent's time) if the agency fails to make a finding against Owner." **Exhibit 5**, p. 5. This provision is not discriminatory. It does not single out any protected class, nor is it limited to claims brought under the FHA or a related act. It is simply a generally applicable attorney fees clause that applies to any resident who brings any claim against the landlord with a state or federal agency. And it harms the resident only if the claim is ultimately unmeritorious.

Conlin also argues that the Lease's limited damages provision discriminates against individuals protected by the FHA. The relevant provision states that the "Resident agrees to look solely to Owner's equity, interest and rights in the Premises for satisfaction of any claims or damages or other remedies of Resident. Owner shall not be liable for consequential or punitive damages." **Exhibit 5**, p. 6. Again, this provision is not discriminatory in any manner. The provision applies to all residents, not just residents protected under the FHA or related laws. And it applies to all claims or damages, not just FHA claims. Because none of the Lease provisions are discriminatory, Conlin's First, Fourth, and Fifth Claims should be dismissed with prejudice.

16

## CONCLUSION

For the reasons stated above, the Cullimore Defendants respectfully request that the Court grant their motion for summary judgment and dismiss with prejudice all of Conlin's Claims.

Dated this 6th day of December, 2019.

PARSONS BEHLE & LATIMER


/s/ Alex B. Leeman
John A. Snow, Esq.
Alex B. Leeman, Esq.

*Attorneys for the Cullimore Defendants*


## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of December, 2019, I caused a true and correct copy of the foregoing to be e-filed via the Court's CM/ECF system and notice provided the following in the manner indicated below:

| | |
|---|---|
| John D. Morris | ( ) U.S. mail, postage pre-paid |
| Lauren N. DeVoe | ( ) Hand delivery |
| MORRIS SPERRY | ( ) Overnight mail |
| 7070 S. Union Park Center, Suite 220 | ( ) E-mail |
| Midvale, UT 84047 | (x) Notice of electronic filing |
| john@morrissperry.com | |
| lauren@morrissperry.com | |
| *Attorneys for Plaintiff* | |


/s/ Alex B. Leeman

17