John A. Snow (3125)
jsnow@parsonsbehle.com
Alex B. Leeman (12578)
aleeman@parsonsbehle.com
**PARSONS BEHLE & LATIMER**
201 S. Main Street, Ste. 1800
Salt Lake City, UT 84111
Telephone: 801.532.1234

*Attorneys for the Cullimore Defendants*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| KAYLEE CONLIN,<br><br>        Plaintiff,<br><br>vs.<br><br>RU CLIFF, LLC, a limited liability company; RIZE HOMESOURCE, LLC, a limited liability company; JON NEVIASER, an individual; LAW OFFICE OF KIRK A. CULLIMORE, LLC, a limited liability company; KIRK A. CULLIMORE, an individual,<br><br>        Defendants. | **DECLARATION OF KIRK A. CULLIMORE IN SUPPORT OF DEFENDANTS LAW OFFICE OF KIRK A. CULLIMORE, LLC AND KIRK A. CULLIMORE'S MOTION FOR SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM**<br><br>Case No. 2:17-cv-01213-TC-DBP<br><br>Judge Tena Campbell<br>Magistrate Judge Dustin B. Pead |

Kirk A. Cullimore hereby declares and states under oath as follows:

1.      I am over eighteen years of age, and have personal knowledge of the matters described in this declaration. If I were called to testify in this case, my testimony would be consistent with this declaration.

4816-0849-8350v2

2.      I am a defendant in the above-captioned case.  I am the managing member of the Law Office of Kirk A. Cullimore, LLC (the "**Law Office**") located in Draper, Utah, which is also one of the defendants in this case.

3.      I am a practicing attorney and have been since 1982.

4.      I am the person responsible for the work product produced by the Law Office.

5.      A substantial portion of the Law Office's practice involves the legal representation and counsel of landlords in various matters, including the Fair Housing Act (the **"Act"**) and claims and disputes related to the Act.

6.      In connection with this work, I have drafted or supervised the drafting of a suite of forms for use by clients of the Law Office in various contexts, including matters related to the Act.

7.      These forms are made available to the Law Office's clients via a secured website of the Law Firm.

8.      The practice and policy of the Firm is that each time an attorney from the Law Office meets with a client for training, the attorney instructs and reminds the client to always use the updated forms on the Law Firm's website, because the forms are frequently updated.

9.      The forms at issue in this case include (1) the Affidavit and Request for Companion Animal" form, (2) the "Animal Identification Form," and (3) the "Medical Request for Companion Animal" form ("**Old Forms**"). Copies of the Old Forms are attached as Exhibits 2, 3, and 4 to the accompanying Motion for Summary Judgment.

10.      In April 2015, the Law Office created new forms to replace the original Old Forms as part of negotiations which resulted in several conciliation agreements with HUD ("**New**

**Forms**"). Copies of the New Forms are attached hereto as Exhibits A, B, and C. A copy of the Conciliation Agreements approving the forms is attached as Exhibit D.

11.     The original Old Forms were removed from the secured website in October of 2014 and the New Forms were published and posted in April of 2015.

12.     The Law Office also sent out an e-mail and a newsletter to all of its clients, informing them about the New Forms and specifically directing them to use the New Forms.

13.     The Law Office's clients include Defendants RU Cliff, LLC ("**RU Cliff**") and Rize Homesource, LLC ("**Rize**"); the emails and notices were sent to them.

14.     Despite being instructed not to use the outdated and unapproved Old Forms, RU Cliff and Rize apparently provided those Old Forms to Kaylee Conlin ("**Conlin**") in response to Conlin's request for accommodation in November 2015.

15.     Neither I nor the Law Office knew about Conlin's request until after her request was granted.

16.     Consequently, neither I nor the Law Office ever made any of the ultimate decisions regarding how to address Conlin's request to keep Buckley, including whether to threaten eviction, whether to request that she fill out the outdated Old Forms, how long to give her to fill out the Old Forms, or whether to ultimately grant or deny her requests. All those decisions, and any similar such decisions, were made by RU Cliff and/or Rize.

I declare under the penalty of perjury of the law of the State of Utah that the foregoing is true and correct.

//

DATED this 6th day of December, 2019.

/s/ Kirk A. Cullimore
Signature added with permission received via e-mail

Kirk A. Cullimore

# Exhibit A

4816-0849-8350v2

> ***These Instructions are for instructional purposes only, and should not be given to a resident as part of the Assistance Animal request packet.

# Assistance Animal Forms Instructions

Please read and review before use of these forms.

1. Remember that neither HUD nor any state has "approved" the forms.  Usage always has some risk. Also, every case is independent and should be reviewed on its merits and facts.
2. These forms are for any Assistance Animal wherein the need for the animal is not readily apparent. Service animals where the need is apparent need not use this form but should still provide the information on the Animal Identification Form.
3. You can require the information on the animal and ask that the Resident affirm their request for the Assistance Animal.
4. Give them the Verification for Assistance Animal form as a guide for the health care professional. If the professional does not want to sign it and provides substantially the same information in another format, it must be accepted. Remember to review your policy on who can provide this information.
5. If the Resident provides any documentation from a professional or other qualified person, it should be reviewed to make sure it provides sufficient information to confirm the status and nexus.  If not, an attempt to get verification of the information needed directly from the person who signed the form should be first attempted.
6. A  HIPAA FORM IS NOT REQUIRED.      Many health care professionals will not discuss the patient without the HIPAA form. **Verification does not require the HIPAA form.** Explain to the health care professional that you are merely verifying the information that has already been provided. If you are unable to verify, you should inform the Resident of the problem to see if they can get the health care professional to provide the verification. Seek assistance from legal counsel and/or your regional manager in this circumstance.
7. It is the intent of these forms to gather sufficient information and verify that information to determine if a reasonable accommodation should be granted or not.
8. Failure to provide sufficient information may be grounds for denial. Sufficient information would include: a description of the animal, verification from someone that the Resident meets the definition of disabled and that there is a nexus between the disability and the need for the animal, and the other information contained on the Animal Identification Form.
9. **All communities should have animal rules.  Persons who obtain an animal by reasonable accommodation generally must abide by those rules (excepting breed restrictions and size & weight restrictions). Those rules should be given to residents with animals.**
10. These forms should not be given out unless someone has filled out an application and is actually attempting to rent.
11. Questions on Assistance Animals from _prospective_ residents should be answered:
    > *This Community fully complies with the Fair Housing laws as it applies to disabilities. Persons who desire an accommodation must convey that request to management, who will then attempt to obtain sufficient verified information to determine if the request can be granted and how it can be accommodated. Since every situation is different, each request is treated separately. It is impossible to give a blanket answer on questions of accommodation. If a prospective tenant desires to apply, we will then accept any request and make a full review to see if it can be accommodated.*
12. If you have any questions on a request, contact legal counsel.
13. If you think someone is testing your community on reasonable accommodation, contact your regional manager/owner and contact legal counsel.

© The Law Offices of Kirk A. Cullimore 4/2015 This form may not be reproduced without express written permission.

# Resident's Request for Assistance Animal

*The undersigned does hereby request as assistance animal and does hereby attest and state as follows:*

**1. Handicap Definition**   I am aware of the requirements of the Fair Housing Act and its definitions which include:
*"Handicap" means, with respect to a person –*
*(1) having a physical or mental impairment which substantially limits one or more of such person's major life activities,*
*(2) having a record of having such an impairment, or*
*(3) being regarded as having such an impairment, but such term does not include current, illegal use of or addiction to a controlled substance.*

**2. Qualification**   Pursuant to the definition above, I do qualify as an individual with a disability.

**3. Impairment**   I represent that the requested assistance animal is necessary to provide assistance with my disability.

The anticipated length of this disability is _____.

My primary care physician is Dr._____ whose telephone number is _____.

**4. Request**   I do hereby request that I be able to reside with an assistance animal at the premises below. I certify that the statements herein are true as provided on the Animal Identification Form and the Medical Request for an Assistance Animal. I agree that the only animal I will keep for this purpose is listed therein and that I will abide by the rules and regulations of the community regarding animals. I understand that I will not have to pay additional costs or fees for the assistance animal but will be responsible for any damage caused. I request that my professional provide verification of the required information to my housing provider to assist in making this determination.

Applicant's Name _____

Premises Address _____

_____

Dated _____          _____
                                        Signature of Applicant

© The Law Offices of Kirk A. Cullimore 4/2015 This form may not be reproduced without express written permission.

# Exhibit B

4816-0849-8350v2

# __Animal Identification Form__

Type of animal _____        Breed _____

Age _____        Approximate Weight _____        Color _____

Describe any special training or certifications _____

_____

Has the animal ever been reported to authorities (police, animal control) for any incident or for any reason? _____.   If yes, please provide details.

_____

**Animals may not be in the common areas of the community unless on a leash or an approved device based upon the animal's certification.**

**Animals may be restricted from specific areas.**

**The animal's owners are responsible for cleaning up after the animal and for any damage done by the animal.**

**Animals may not disturb the peaceful and quiet enjoyment of the other tenants.**

**The Community may have other regulations and rules relating to animals.**

**I affirm that the animal is in compliance with all state and local laws concerning animals.**

I have read the rules and regulations concerning animals (both above and those policies of the community), and agree to their terms.

_____        _____

Resident's signature        Dated

*Please provide a photo of the animal.*



© The Law Offices of Kirk A. Cullimore 4/2015 This form may not be reproduced without express written permission.

# Exhibit C

4816-0849-8350v2

# <u>Verification for Assistance Animal</u>

Name of Person making Request _____

    A request has been made to allow an assistance animal to reside with the above named individual. Such request has been made pursuant to The Fair Housing Act. In order to qualify for an assistance animal exemption to the normal rules of the community, the person making the request **must qualify as handicapped as defined**, which is:

> *"Handicap" means, with respect to a person* –
> *(1)  having a physical or mental impairment which substantially limits one or more of such person's major life activities,*
> *(2) having a record of having such an impairment, or*
> *(3)  being regarded as having such an impairment, but such term does not include current, illegal use of or addiction to a controlled substance.*

> *<u>Additionally, the assistance animal must assist the person in ameliorating the disability and/or the major life activities effected.</u>*

    **Much like a prescription, this request is made because of the professional's opinion that the assistance animal may be necessary to afford the disabled person an equal opportunity to use and enjoy the leased premises.  With this request and upon approval, the management of the premises must allow the animal on the premises and is prohibited from charging pet rent or other fees normally charged to persons with pets.  Assistance animals are not pets but animals that are determined by competent professionals to be an important and necessary part of treatment or assistance of a disability/handicap.**

Professional's Name: _____     Telephone number: _____

*I certify that I have sufficient information and have consulted with the person making this request in order to make this determination. I certify that the above named person is handicapped as defined above and that the animal described below is, in my professional opinion, necessary to afford an equal opportunity to use and enjoy the leased premises.*

Prescribed Animal's Description _____

Expiration Date of this Certification _____

_____                         _____
         Date                                          *Signature of* Medical Provider,
                                              Health or Social Service Professional



© The Law Offices of Kirk A. Cullimore 4/2015 This form may not be reproduced without express written permission.

# Exhibit D

4816-0849-8350v2




### THE U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
### TITLE VIII CONCILIATION AGREEMENT BETWEEN

Rosezenia Johnson
4521 Bridgeside Way, Apt 16-E
Taylorsville, UT 84123
(Complainant)

And

Bridgeside, LLC
6440 S. Wasatch Blvd
Suite 100
Salt Lake City, UT 84121
(Respondent)

And

Cowboy Properties
Property Management Company
6440 S. Wasatch Blvd
Suite 100
Salt Lake City, UT 84121
(Respondent)

And

Norma Silva
Property Manager
6440 S. Wasatch Blvd
Suite 100
Salt Lake City, UT 84121
(Respondent)

And

Kirk A. Cullimore Attorney/Agent
644 E. Union (9400 S)
Sandy, UT 84070
(Respondent)

And

Kirk A. Cullimore, LLC
644 E. Union (9400 S)
Sandy, UT 84070
(Respondent)

**Approved by the Office of Fair Housing and Equal Opportunity (FHEO), Region VIII Director on behalf of the U.S. Department of Housing and Urban Development**
**Title VIII Case Number: 08-15-0015-8**

*Conciliation Agreement*                                                                     *Page 1*
*Johnson vs. Bridgeside, LLC*
*FHEO Case Number: 08-15-0015-8*
v1.08-15-0015-8

CLF0055

### A.   PARTIES

**Complainant:**

Rosezenia Johnson

**Respondents:**

Bridgeside, LLC

Cowboy Properties

Norma Silva

Kirk A. Cullimore

Kirk A. Cullimore, LLC

The subject property is located at 4521 Bridgeside Way, Apt 16-E, in Taylorsville, UT 84123.

### B.   STATEMENT OF FACTS

A complaint was filed on October 30, 2014, with the U.S. Department of Housing and Urban Development (HUD or the Department) alleging one or more discriminatory housing practices under the Fair Housing Act (the Act). Complainant alleges Respondents discriminated against her based on disability violating Sections 804(f)(2)(A), and 804(f)(3)(B) of the Civil Rights Act of 1968, as amended by the Fair Housing Act of 1988.

Respondents deny that they engaged in any discriminatory housing practices, but agree to settle the Complaint by entering into this Conciliation Agreement.

It is understood by all parties that this Agreement does not constitute an admission by Respondents of any violation of the Act.

### C.   TERM OF AGREEMENT

1.   This Conciliation Agreement (Agreement) shall govern the conduct of the parties to it for a period of one (1) year from its effective date.

*Conciliation Agreement*
*Johnson vs. Bridgeside, LLC*
*FHEO Case Number: 08-15-0015-8*

*Page 2*

CLF0056

**D.    EFFECTIVE DATE**

2.    This Agreement shall become effective on the date that it is approved by the FHEO Region VIII Director, Denver, Colorado or his or her designee.

3.    The parties agree that this Agreement constitutes neither a binding contract under state or federal law nor a conciliation agreement pursuant to the Act until it is approved by the Department through the FHEO Region VIII Director or his or her designee.

**E.    GENERAL PROVISIONS**

4.    The parties acknowledge that this Agreement is a voluntary and full settlement of the disputed Complaint.  The parties affirm that they have read and fully understand the terms set forth herein.  No party has been coerced, intimidated, threatened, or in any way forced to become a party to this Agreement.

5.    The Respondents acknowledge that they have an affirmative duty not to discriminate under the Act, and that it is unlawful to retaliate against any person because that person has made a complaint, testified, assisted, or participated in any manner in a proceeding under the Act.  The Respondents further acknowledge that any subsequent retaliation or discrimination constitutes both a material breach of this Agreement and a statutory violation of the Act.

6.    After it has been approved by the FHEO Region VIII Director or his or her designee, this Agreement is binding upon the Respondents and their employees, heirs, successors and assigns, and all others in active concert with the operation of the subject property.

7.    It is understood that upon approval of this Agreement by the FHEO Region VIII Director or his or her designee, it is a public document pursuant to § 3610(b)(4) of the Act.

8.    This Agreement does not in any way limit or restrict the Department's authority to investigate any other complaint involving the Respondents made pursuant to the Act or any other complaint within the Department's jurisdiction.

9.    No amendment to, modification of, or waiver of any provisions of this Agreement will be effective unless: (a) all signatories to the Agreement or their successors agree in writing to the amendment, modification, or waiver; (b) the amendment, modification, or waiver is in writing; and (c) the amendment, modification, or waiver is approved and signed by the FHEO Region VIII Director or his or her designee.

CLF0057

10. The parties agree that the execution of this Agreement may be accomplished by separate execution of consents to this Agreement, and that the original executed signature pages attached to the body of the Agreement constitute one document.

11. The Complainant hereby forever waives, releases, and covenants not to sue the Department, Respondents and their heirs, executors, assigns, agents, employees, and attorneys with regard to any and all claims, damages, injuries, of whatever nature, whether presently known or unknown, arising out of the subject matter of FHEO Case Number 08-15-0015-8, or which could have been filed in any action or suit arising from said subject matter.

12. Respondents hereby forever waive, release, and covenants not to sue the Department, Complainant and their successors with regards to any and all claims, damages, and injuries of whatever nature whether presently known or unknown, arising out of the subject matter of FHEO Case Number 08-15-0015-8 or which could have been filed in any action or suit arising from said subject matter.

13. The individual(s) signing on behalf of any Complainant or Respondent hereby represents that they have authority to sign for that party and that their signature will bind that party.

F. **RELIEF FOR COMPLAINANT**

14. Respondents agree to grant a reasonable accommodation from its no pet policy for Complainant's assistance animal. Respondents also agree that no fees or costs will be assessed for the approval of the accommodation request for Complainant's assistance animal.

15. Respondents agree that any and all currently existing eviction notices which may exist will be voided as part of this Agreement. Any notice relating to non-renewal will also be vacated. However, nothing herein shall be implied to restrict future eviction notices for cause, violation of lease terms, or non-payment of amounts due.

16. Respondents agree that Bridgeside will allow Complainant to terminate the existing lease during its initial term with only thirty (30) days written notice. Complainant will only be obligated to pay for rent through that notice date (provided she vacates) and for normal damages beyond normal wear and tear. Bridgeside will not charge any early termination costs or fees nor penalize Complainant for the early vacating of the premises. Bridgeside shall not represent to future potential landlords that the lease was broken early. This provision shall only apply to the current lease and shall not be deemed to allow early termination on any new lease signed after this agreement is executed. Respondents also agree not to terminate Complainant's lease unless based on good cause or substantial lease violations.

CLF0058

### G.   RELIEF IN THE PUBLIC INTEREST

17.   Within six (6) months of the effective date of the Agreement, all employees of the Respondents who are employed at, or provide services for, the subject property agree to attend a fair housing training to be conducted by an appropriate agency or organization approved by the Department.  Written approval to attend training offered by an agency or organization must be solicited and obtained from the FHEO Region VIII Director at least thirty (30) days prior to the commencement of the training.  The Respondents will be responsible for all costs associated with attending the training.  The training will include the issues in this instant fair housing complaint (reasonable accommodation requests and assistance, service, emotional support or companion animals).

18.   Complainant and Respondents have jointly agreed to the Respondents revised Reasonable Accommodation policy, forms, and the accompanying instruction sheet Respondents created as a result of this instant fair housing complaint.  HUD has reviewed the revised reasonable accommodation policy, forms, and the instruction sheet and concur that the revisions are consistent with the Fair Housing Act, 42 U.S.C. 3601, et seq., as amended, with regard to disability status.  Once approved by HUD, Respondents will distribute a notice that changes were made to the Reasonable Accommodation policy and forms to all tenants, and include in the notice an invitation to view or receive a copy of the policy and amended forms upon request.

### H.   MONITORING

19.   The Department will determine compliance with the terms of this Agreement.  During the term of the Agreement, the Department may review compliance with the Agreement by examining witnesses and copying pertinent records.  Monitoring this agreement may also include, but is not limited to, conducting fair housing tests by the Department or other entity.  The Respondents agree to provide full cooperation in any monitoring review undertaken by the Department to ensure compliance with the Agreement.

### I.   REPORTING AND RECORDKEEPING

20.   Within thirty (30) days of the effective date of this Agreement, Respondents shall certify to the FHEO Region VIII Director, in writing, that they have complied with paragraph fourteen (14) of this agreement.

21.   Within thirty (30) days of the effective date of this Agreement, Respondents shall certify to the FHEO Region VIII Director, in writing, that they have complied with paragraph fifteen (15) of this agreement.

*Conciliation Agreement*
*Johnson vs. Bridgeside, LLC*
*FHEO Case Number:  08-15-0015-8*

*Page 5*

CLF0059

22.    Within thirty (30) days of Complainant's departure from the subject property, Respondents shall certify to the FHEO Region VIII Director, in writing, that they have complied with paragraph sixteen (16) of this agreement.

23.    Within fourteen (14) days of completion of the training required by paragraph seventeen (17) of this Agreement (unless sooner waived pursuant to its terms), the Respondents shall certify to the FHEO Region VIII Director that the training for the Respondents was completed and submit a copy of the certification as evidence of completion.

24.    Within seventy-five (75) days of the effective date of this Agreement, Respondents agree to provide proof of publishing, posting, and disseminating the notice to all tenants and clients as identified in paragraph (18) eighteen, to the FHEO Region VIII Director.

25.    All Reports and correspondence pursuant to this Agreement shall include FHEO Case Number 08-15-0015-8.  All required certifications and documentation of compliance must be submitted to:

    Amy M. Frisk, Region VIII Director
    Office of Fair Housing and Equal Opportunity
    U.S. Department of Housing and Urban Development
    1670 Broadway, 23rd floor
    Denver, Colorado 80202-4801

**J.**  **CONSEQUENCES OF BREACH**

24.    Whenever the Department has reasonable cause to believe that the Respondents have breached this Agreement, the matter may be referred to the Attorney General of the United States to commence a civil action in the appropriate U.S. District Court, pursuant to §§ 3610(c) and 3614(b) of the Act.

CLF0060

K.   SIGNATURES

_____                    4·10·2015
Rokezenia Johnson                              Date
Complainant


_____                    _____
Norma Silva                                    Date
Respondent


_____                    _____
Kirk A. Cullimore                              Date
Attorney/Agent for Cowboy Properties
Respondent


_____                    _____
Signing on behalf of                           Date
Bridgeside, LLC
Respondent


_____                    _____
Signing on behalf of                           Date
Cowboy Properties
Respondent


_____                    _____
Signing on behalf of                           Date
Kirk A. Cullimore, LLC
Respondent


APPROVAL


_____                    _____
Amy M. Frisk                                   Date
Region VIII Director
Office of Fair Housing and Equal Opportunity

CLF0061

K.    SIGNATURES

_____          _____
Rosezenia Johnson                        Date
Complainant

_____          _____
Norma Silva                              4/6/15
Respondent                               Date

_____          _____
Kirk A. Cullimore                        Date
Attorney/Agent for Cowboy Properties
Respondent

_____          _____
Signing on behalf of                     Date
Bridgeside, LLC
Respondent

_____          _____
Signing on behalf of                     4. 7. 15
Cowboy Properties                        Date
Respondent

_____          _____
Signing on behalf of                     Date
Kirk A. Cullimore, LLC
Respondent

APPROVAL

_____          _____
Amy M. Frisk                             Date
Region VIII Director
Office of Fair Housing and Equal Opportunity

CLF0062

K.     SIGNATURES

_____         _____
Rosezenia Johnson                       Date
Complainant

_____         _____
Norma Silva                             Date
Respondent

_____         _____5-8-15_____
Kirk A. Cullimore                       Date
Attorney/Agent for Cowboy Properties
Respondent

_____         _____
Signing on behalf of                    Date
Bridgeside, LLC
Respondent

_____         _____
Signing on behalf of                    Date
Cowboy Properties
Respondent

_____         _____5-8-15_____
Signing on behalf of                    Date
Kirk A. Cullimore, LLC
Respondent

APPROVAL

_____         _____5/15/15_____
Amy M. Prisk                            Date
Region VIII Director
Office of Fair Housing and Equal Opportunity

---

*Conciliation Agreement*                                        *Page 7*
*Johnson vs. Bridgeside, LLC*
*FHEO Case Number:  08-15-0015-8*

CLF0063



### THE U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT



### <u>TITLE VIII CONCILIATION AGREEMENT</u>

### <u>BETWEEN</u>

Disability Law Center
205 North 400 West
Salt Lake City, UT 84103
(Complainant)

And

HZ Seven65 Apartments, LLC, et al
37 Graham Street, Suite 200 B
San Francisco, CA 94129
(Respondent)

And

Mission Rock Residential, LLC
Property Management Company
1355 S. Colorado Boulevard, Suite C-710
Denver, CO 80222
(Respondent)

Approved by the Office of Fair Housing and Equal Opportunity (FHEO), Region VIII
Director on behalf of the U.S. Department of Housing and Urban Development

Title VIII Case Number:  08-14-0242-8

*Conciliation Agreement*
*Disability Law Center v. HZ Seven65 Apartments, LLC, et al*
*Title VIII Case Number: 08-14-0242-8*
*v1.08-14-0242-8*

*Page 1*

CLF0077

A.    **PARTIES**

**Complainant:**

Disability Law Center

**Respondents:**

HZ Seven65 Apartments, LLC (Property Owner)

Mission Rock Residential, LLC (Property Management Company)

The subject property is a multi-unit complex with 128 units that consists of two bedrooms and studio apartments, located in Salt Lake City, Utah. The subject property does not receive any federal financial assistance.

B.    **STATEMENT OF FACTS**

A complaint (the Complaint) was filed on August 19, 2014, with the U. S. Department of Housing and Urban Development (HUD or the Department) alleging one or more discriminatory housing practices under the Fair Housing Act (the Act). The Complainant alleges the Respondents subjected potential rental applicants to different terms and conditions and otherwise denied or made housing unavailable by implementing a policy that requires applicants to complete documentation which requires extensive disclosure and release of information regarding their disabilities and accommodation of a companion animal violating Sections 804(f)(1) and 804(f)(2)(A) of the Act.

The Respondents deny engaging in any intentional discriminatory housing practices, but agree to settle the Complaint by entering into this Conciliation Agreement. The parties agree that their entry into this Conciliation Agreement is a compromise of disputed claims, and that the terms hereof are not to be construed as an admission of liability on the part of the Respondents, by whom liability is expressly denied.

It is understood by all parties that this Conciliation Agreement does not constitute an admission by the Respondents of any violation of the Act.

C.    **TERM OF AGREEMENT**

1.    This Conciliation Agreement (Agreement) shall govern the conduct of the parties to it for a period of one (1) year from its effective date.

CLF0078

D.   **EFFECTIVE DATE**

2.      This Agreement shall become effective on the date that it is approved by the
FHEO Region VIII Director, Denver, Colorado or his or her designee.

3.      The parties agree that this Agreement constitutes neither a binding contract under
state or federal law nor a conciliation agreement pursuant to the Act until it is
approved by the Department through the FHEO Region VIII Director or his or her
designee.

E.   **GENERAL PROVISIONS**

4.      The parties acknowledge that this Agreement is a voluntary and full settlement of
the disputed Complaint.  The parties affirm that they have read and fully
understand the terms set forth herein.  No party has been coerced, intimidated,
threatened, or in any way forced to become a party to this Agreement.

5.      The Respondents acknowledge that they have an affirmative duty not to
discriminate under the Act, and that it is unlawful to retaliate against any person
because that person has made a complaint, testified, assisted, or participated in
any manner in a proceeding under the Act.  The Respondents further acknowledge
that any subsequent retaliation or discrimination against the Complainant
resulting from the filing of the Complaint constitutes both a material breach of
this Agreement and a statutory violation of the Act.

6.      After it has been approved by the FHEO Region VIII Director or his or her
designee, this Agreement is binding upon the Respondents individually and upon
Respondents' employees, heirs, successors and assigns.

7.      It is understood that upon approval of this Agreement by the FHEO Region VIII
Director or his or her designee, it is a public document pursuant to § 3610(b)(4) of
the Act.

8.      This Agreement does not in any way limit or restrict the Department's authority
to investigate any other complaint involving the Respondents made pursuant to
the Act or any other complaint within the Department's jurisdiction (Secretary
Initiated investigation under the Act).

9.      No amendment to, modification of, or waiver of any provisions of this Agreement
will be effective unless: (a) all signatories to the Agreement or their successors
agree in writing to the amendment, modification, or waiver; (b) the amendment,
modification, or waiver is in writing; and (c) the amendment, modification, or

CLF0079

waiver is approved and signed by the FHEO Region VIII Director or his or her designee.

10.   The parties agree that the execution of this Agreement may be accomplished by separate execution of consents to this Agreement, and that the original executed signature pages attached to the body of the Agreement constitute one document.

11.   The Complainant forever waives, releases, and covenants not to sue the Respondents, their heirs, executors, assigns, officers, agents, employees and attorneys with regard to any and all claims, damages and injuries of whatever nature, whether presently known or unknown, arising out of the subject matter of FHEO Title VIII Case Number 08-14-0242-8, or which could have been filed in any action or suit arising from said subject matter.

12.   The Respondents hereby forever waive, release, and covenant not to sue the Department or the Complainant, its successors, assigns, agents, officers, employees and attorneys with regard to any and all claims, damages and injuries of whatever nature whether presently known or unknown, arising out of the subject matter of FHEO Title VIII Case Number 08-14-0242-8, or which could have been filed in any action or suit arising from said subject matter.

13.   The individual(s) signing on behalf of any Respondent(s) hereby represents that they have authority to sign for that Respondent and that their signature will bind that Respondent.

F.   **RELIEF FOR COMPLAINANT**

14.   Within thirty (30) days of the effective date of this Agreement, Respondents shall pay to the Complainant Disability Law Center, the total sum of one-thousand two-hundred and thirteen dollars and seventy-five cents ($1,213.75). This amount is directly related to Complainant's investigative costs in this matter and the use and coordination of Testers at the subject property. This amount will be paid by certified bank check, made payable to the Disability Law Center and delivered via Federal Express or Certified Mail to the following address:

> Disability Law Center
> 205 North 400 West
> Salt Lake City, UT  84103

15.   Within sixty (60) days of the effective date of this Agreement, Respondents shall pay to the Complainant Disability Law Center, the total sum of fifteen-hundred dollars ($1,500.00) for Complainants resources expended (frustration of mission) directly related to this instant fair housing complaint. This amount will be paid by certified bank check, made payable to the Disability Law Center and delivered via

CLF0080

Federal Express or Certified Mail to the address in requirement fourteen (14) of this Agreement.

**G.    RELIEF IN THE PUBLIC INTEREST**

16.    Within six (6) months of the effective date of the Agreement, all employees of the Respondents who are employed at, or provide services for, the subject property agree to attend a fair housing training to be conducted by an appropriate agency or organization approved by the Department.  Written approval to attend training offered by an agency or organization must be solicited and obtained from the FHEO Region VIII Director at least thirty (30) days prior to the commencement of the training.  The Respondents will be responsible for all costs associated with attending the training.  The training will include the issues in this instant fair housing complaint (reasonable accommodation requests and assistance, service, emotional support or companion animals).

17.    Complainant and Respondents have jointly agreed to the Respondents revised Reasonable Accommodation policy, forms, and the accompanying instruction sheet Respondents created as a result of this instant fair housing complaint.  HUD has reviewed the revised reasonable accommodation policy, forms, and the instruction sheet and concur that the revisions are consistent with the Fair Housing Act, 42 U.S.C. 3601, et seq., as amended, with regard to disability status.  Once approved by HUD, Respondents will distribute a notice that changes were made to the Reasonable Accommodation policy and forms to all tenants. and include in the notice an invitation to view or receive a copy of the policy and amended forms upon request.

**H.    MONITORING**

18.    The Department will determine compliance with the terms of this Agreement.  During the term of the Agreement, the Department may review compliance with the Agreement by examining witnesses and copying pertinent records.  Monitoring this agreement may also include, but is not limited to, conducting fair housing tests by the Department or other entity.  Respondents agree to provide full cooperation in any monitoring review undertaken by the Department to ensure compliance with the Agreement.

**I.    REPORTING AND RECORDKEEPING**

19.    Within forty (40) days of the effective date of this Agreement, the Respondents agree to transmit a photocopy of the check identified in paragraph fourteen (14),

CLF0081

together with a copy of the delivery tracking report or certified mail receipt as evidence of delivery, to the FHEO Region VIII Director.

20.   Within sixty (60) days of the effective date of this Agreement, the Respondents agree to transmit a photocopy of the check identified in paragraph fifteen (15), together with a copy of the delivery tracking report or certified mail receipt as evidence of delivery, to the FHEO Region VIII Director.

21.   Within fourteen (14) days of completion of the training required by paragraph sixteen (16) of this Agreement (unless sooner waived pursuant to its terms), the Respondents shall certify to the FHEO Region VIII Director that the training for the Respondents was completed and submit a copy of the certification as evidence of completion.

22.   Within seventy-five (75) days of the effective date of this Agreement, the Respondents agree to provide proof of publishing, posting, and disseminating the notice to all tenants and clients as identified in paragraph seventeen (17), to the FHEO Region VIII Director.

23.   All Reports and correspondence pursuant to this Agreement shall include Title VIII Case Number: 08-14-0242-8. All required certifications and documentation of compliance must be submitted to:

> Amy Frisk, Region VIII Director
> Office of Fair Housing and Equal Opportunity
> U.S. Department of Housing and Urban Development
> 1670 Broadway, 23rd floor
> Denver, Colorado 80202-4801

## J.   CONSEQUENCES OF BREACH

24.   Whenever the Department has reasonable cause to believe that the Respondents have breached this Agreement, the matter may be referred to the Attorney General of the United States to commence a civil action in the appropriate U.S. District Court, pursuant to §§ 3610(c) and 3614(b) of the Act.

*Conciliation Agreement*
*Disability Law Center v. HZ Seven65 Apartments LLC, et al*
*Title VIII Case Number:  08-14-0242-8*
           *Page 6*

CLF0082

K.    SIGNATURES

Complainant:  Disability Law Center

By: Aaron Kinikini                                                    5/4/2015
Its: Legal Director                                                   Date

Respondent:  HZ Seven65 Apartments, LLC

See following page for signature
By:                                                                   _____
Its:                                                                  Date

Respondent:  Mission Rock Residential, LLC

_____                                            _____
By:                                                                   Date
Its:

APPROVAL

Amy M. Frisk                                                          12 May 2015
Amy Frisk                                                             Date
Region VIII Director
Office of Fair Housing and Equal Opportunity

CLF0083

K.   SIGNATURES

Complainant:  Disability Law Center

By: _____        Date _____
Its:

Respondent:  HZ Seven65 Apartments, LLC

By: _____        _5. 11. 15_
Its: _____                       Date

Respondent:  Mission Rock Residential, LLC

By: _____        _5. 11. 15_
Its: _____                               Date

APPROVAL

_____        Date _____
Amy Frisk
Region VIII Director
Office of Fair Housing and Equal Opportunity

---

*Conciliation Agreement*
*Disability Law Center v. HZ Seven65 Apartments LLC, et al*                         Page 7
*Title VIII Case Number: 08-14-0242-8*

CLF0084

RESPONDENT:     **HZ SEVEN65 APARTMENTS, LLC**, a Delaware limited
liability company

       By:    HZ Seven65 Manager, LLC, a Delaware limited
              liability company

       Its:    Manager

           By:    Hamilton Zanze & Company, a California
                corporation

           By:   _____

           Name:   Anthony Zanze

           Its:    Sole Member




## THE U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

### TITLE VIII CONCILIATION AGREEMENT

### BETWEEN

Disability Law Center
205 North 400 West
Salt Lake City, UT 84103
(Complainant)

And

Cliffside Apartments, LLC
1099 W. Jordan Parkway
South Jordan, UT 84095
(Respondent)

And

Concept Property Management, Inc.
Property Management Company
1955 S. 1300 East, Suite 7
Salt Lake City, UT 84103
(Respondent)

And

Jessie Hathaway, Leasing Agent
Concept Property Management Company
2150 S. 1300 East, Suite 500
Salt Lake City, UT 84106
(Respondent)

Approved by the Office of Fair Housing and Equal Opportunity (FHEO), Region VIII
Director on behalf of the U.S. Department of Housing and Urban Development

Title VIII Case Number:  08-14-0246-8

*Conciliation Agreement*
*Disability Law Center v. Cliffside Apartments, LLC*
*Title VIII Case Number:  08-14-0246-8*
*v.2.08-14-0246-8*

*Page 1*

CLF0064

A.    **PARTIES**

**Complainant:**

Disability Law Center

**Respondents:**

Cliffside Apartments, LLC (Property Owner)

Concept Property Management, Inc. (Property Management Company)

Jessie Hathaway (Leasing Agent, Concept Property Management Company)

The subject property is a two-story complex with 27 units that consists of one and two bedroom apartments, located in Salt Lake City, Utah. The subject property does not receive any federal financial assistance.

B.    **STATEMENT OF FACTS**

A complaint (the Complaint) was filed on August 19, 2014, with the U. S. Department of Housing and Urban Development (HUD or the Department) alleging one or more discriminatory housing practices under the Fair Housing Act (the Act). The Complainant alleges the Respondents subjected potential rental applicants to different terms and conditions and otherwise denied or made housing unavailable by implementing a policy that requires applicants to complete documentation which requires extensive disclosure and release of information regarding their disabilities and accommodation of a companion animal violating Sections 804(f)(1) and 804(f)(2)(A) of the Act.

The Respondents deny engaging in any intentional discriminatory housing practices, but agree to settle the Complaint by entering into this Conciliation Agreement. The parties agree that their entry into this Conciliation Agreement is a compromise of disputed claims, and that the terms hereof are not to be construed as an admission of liability on the part of the Respondents, by whom liability is expressly denied.

It is understood by all parties that this Conciliation Agreement does not constitute an admission by the Respondents of any violation of the Act.

CLF0065

## C.   TERM OF AGREEMENT

1.   This Conciliation Agreement (Agreement) shall govern the conduct of the parties to it for a period of one (1) year from its effective date.

## D.   EFFECTIVE DATE

2.   This Agreement shall become effective on the date that it is approved by the FHEO Region VIII Director, Denver, Colorado or his or her designee.

3.   The parties agree that this Agreement constitutes neither a binding contract under state or federal law nor a conciliation agreement pursuant to the Act until it is approved by the Department through the FHEO Region VIII Director or his or her designee.

## E.   GENERAL PROVISIONS

4.   The parties acknowledge that this Agreement is a voluntary and full settlement of the disputed Complaint.  The parties affirm that they have read and fully understand the terms set forth herein.  No party has been coerced, intimidated, threatened, or in any way forced to become a party to this Agreement.

5.   The Respondents acknowledge that they have an affirmative duty not to discriminate under the Act, and that it is unlawful to retaliate against any person because that person has made a complaint, testified, assisted, or participated in any manner in a proceeding under the Act.  The Respondents further acknowledge that any subsequent retaliation or discrimination against the Complainant resulting from the filing of the Complaint constitutes both a material breach of this Agreement and a statutory violation of the Act.

6.   After it has been approved by the FHEO Region VIII Director or his or her designee, this Agreement is binding upon the Respondents individually and upon Respondents' employees, heirs, successors and assigns.

7.   It is understood that upon approval of this Agreement by the FHEO Region VIII Director or his or her designee, it is a public document pursuant to § 3610(b)(4) of the Act.

8.   This Agreement does not in any way limit or restrict the Department's authority to investigate any other complaint involving the Respondents made pursuant to the Act or any other complaint within the Department's jurisdiction (Secretary Initiated investigation under the Act).

CLF0066

9.   No amendment to, modification of, or waiver of any provisions of this Agreement will be effective unless: (a) all signatories to the Agreement or their successors agree in writing to the amendment, modification, or waiver; (b) the amendment, modification, or waiver is in writing; and (c) the amendment, modification, or waiver is approved and signed by the FHEO Region VIII Director or his or her designee.

10.   The parties agree that the execution of this Agreement may be accomplished by separate execution of consents to this Agreement, and that the original executed signature pages attached to the body of the Agreement constitute one document.

11.   The Complainant forever waives, releases, and covenants not to sue the Respondents, their heirs, executors, assigns, officers, agents, employees and attorneys with regard to any and all claims, damages and injuries of whatever nature, whether presently known or unknown, arising out of the subject matter of FHEO Title VIII Case Number 08-14-0246-8, or which could have been filed in any action or suit arising from said subject matter.

12.   The Respondents hereby forever waive, release, and covenant not to sue the Department or the Complainant, its successors, assigns, agents, officers, employees and attorneys with regard to any and all claims, damages and injuries of whatever nature whether presently known or unknown, arising out of the subject matter of FHEO Title VIII Case Number 08-14-0246-8, or which could have been filed in any action or suit arising from said subject matter.

13.   The individual(s) signing on behalf of any Respondent(s) hereby represents that they have authority to sign for that Respondent and that their signature will bind that Respondent.

F.   RELIEF FOR COMPLAINANT

14.   Within thirty (30) days of the effective date of this Agreement, Respondents shall pay to the Complainant Disability Law Center, the total sum of nine-hundred and ninety-two dollars and eighty-one cents ($992.81). This amount is directly related to Complainant's investigative costs in this matter and the use and coordination of Testers at the subject property. This amount will be paid by certified bank check, made payable to the Disability Law Center and delivered via Federal Express or Certified Mail to the following address:

     Disability Law Center
     205 North 400 West
     Salt Lake City, UT  84103

CLF0067

15.   Within sixty (60) days of the effective date of this Agreement, Respondents shall pay to the Complainant Disability Law Center, the total sum of fifteen-hundred dollars ($1,500.00) for Complainants resources expended (frustration of mission) directly related to this instant fair housing complaint.  This amount will be paid by certified bank check, made payable to the Disability Law Center and delivered via Federal Express or Certified Mail to the address in requirement fourteen of this Agreement.

## G.   RELIEF IN THE PUBLIC INTEREST

16.   Within six (6) months of the effective date of the Agreement, all employees of the Respondents who are employed at, or provide services for, the subject property agree to attend a fair housing training to be conducted by an appropriate agency or organization approved by the Department.  Written approval to attend training offered by an agency or organization must be solicited and obtained from the FHEO Region VIII Director at least thirty (30) days prior to the commencement of the training.  The Respondents will be responsible for all costs associated with attending the training.  The training will include the issues in this instant fair housing complaint (reasonable accommodation requests and assistance, service, emotional support or companion animals).

17.   Complainant and Respondents have jointly agreed to the Respondents revised Reasonable Accommodation policy, forms, and the accompanying instruction sheet Respondents created as a result of this instant fair housing complaint.  HUD has reviewed the revised reasonable accommodation policy, forms, and the instruction sheet and concur that the revisions are consistent with the Fair Housing Act, 42 U.S.C. 3601, et seq., as amended, with regard to disability status.  Once approved by HUD, Respondents will distribute a notice that changes were made to the Reasonable Accommodation policy and forms to all tenants, and include in the notice an invitation to view or receive a copy of the policy and amended forms upon request.

## H.   MONITORING

18.   The Department will determine compliance with the terms of this Agreement.  During the term of the Agreement, the Department may review compliance with the Agreement by examining witnesses and copying pertinent records.  Monitoring this agreement may also include, but is not limited to, conducting fair housing tests by the Department or other entity.  Respondents agree to provide full cooperation in any monitoring review undertaken by the Department to ensure compliance with the Agreement.

CLF0068

I.       REPORTING AND RECORDKEEPING

19.    Within forty (40) days of the effective date of this Agreement, the Respondents
       agree to transmit a photocopy of the check identified in paragraph fourteen (14),
       together with a copy of the delivery tracking report or certified mail receipt as
       evidence of delivery, to the FHEO Region VIII Director.

20.    Within sixty (60) days of the effective date of this Agreement, the Respondents
       agree to transmit a photocopy of the check identified in paragraph fifteen (15),
       together with a copy of the delivery tracking report or certified mail receipt as
       evidence of delivery, to the FHEO Region VIII Director.

21.    Within fourteen (14) days of completion of the training required by paragraph
       sixteen (16) of this Agreement (unless sooner waived pursuant to its terms), the
       Respondents shall certify to the FHEO Region VIII Director that the training for
       the Respondents was completed and submit a copy of the certification as evidence
       of completion.

22.    Within seventy-five (75) days of the effective date of this Agreement, the
       Respondents agree to provide proof of publishing, posting, and disseminating the
       notice to all tenants and clients as identified in paragraph seventeen (17), to the
       FHEO Region VIII Director.

23.    All Reports and correspondence pursuant to this Agreement shall include Title
       VIII Case Number: 08-14-0246-8.  All required certifications and documentation
       of compliance must be submitted to:

                    Amy Frisk, Region VIII Director
                    Office of Fair Housing and Equal Opportunity
                    U.S. Department of Housing and Urban Development
                    1670 Broadway, 23rd floor
                    Denver, Colorado 80202-4801

J.       CONSEQUENCES OF BREACH

24.    Whenever the Department has reasonable cause to believe that the Respondents
       has breached this Agreement, the matter may be referred to the Attorney General
       of the United States to commence a civil action in the appropriate U.S. District
       Court, pursuant to §§ 3610(c) and 3614(b) of the Act.

*Conciliation Agreement*
*Disability Law Center v. Cliffside Apartment, LLC*                                              *Page 6*
*Title VIII Case Number:  08-14-0246-8*

CLF0069

## K.   SIGNATURES

Complainant:  Disability Law Center

By: *Aaron Kinikini*
Its: *Legal Director*

4 - 3 - 2015
Date

Respondent:  Cliffside Apartments, LLC

By:
Its:

Date

Respondent:  Concept Property Management, Inc.

By:
Its:

Date

Respondent:  Jessie Hathaway

By:
Its:

Date

### APPROVAL

*Amy M. Frisk*

Amy Frisk
Region VIII Director
Office of Fair Housing and Equal Opportunity

May 7, 2015
Date

CLF0070

Complainant:  Disability Law Center

By: _____     _____
Its:                                                                     Date

Respondent:  Cliffside Apartments, LLC

By: Bryan Wrigley _____     4/9/15 _____
Its: Manager  U. J.                                          Date

Respondent:  Concept Property Management, Inc.

By: Carina Lyons _____     4/15/15 _____
Its: Vice President                                        Date

Respondent:  Jessie Hathaway

By: _____     _____
Its:                                                                     Date


APPROVAL

_____     _____
Amy Frisk                                                    Date
Region VIII Director
Office of Fair Housing and Equal Opportunity

CLF0071

Complainant:  Disability Law Center

By: _____     Date _____
Its:

Respondent:  Cliffside Apartments, LLC

By: _____     Date _____
Its:

Respondent:  Concept Property Management, Inc.

By: _____     Date _____
Its:

Respondent:  Jessie Hathaway

By: _____     Date  4/8/15
Its:

**APPROVAL**

_____     Date _____
Amy Frisk
Region VIII Director
Office of Fair Housing and Equal Opportunity

CLF0072

> **\*\*\*These Instructions are for instructional purposes only, and should not be given to a resident as part of the Assistance Animal request packet.**

## Assistance Animal Forms Instructions

Please read and review before use of these forms.

1. Remember that neither HUD nor any state has "approved" the forms. Usage always has some risk. Also, every case is independent and should be reviewed on its merits and facts.
2. These forms are for any Assistance Animal wherein the need for the animal is not readily apparent. Service animals where the need is apparent need not use this form but should still provide the information on the Animal Identification Form.
3. You can require the information on the animal and ask that the Resident affirm their request for the Assistance Animal.
4. Give them the Verification for Assistance Animal form as a guide for the health care professional. If the professional does not want to sign it and provides substantially the same information in another format, it must be accepted. Remember to review your policy on who can provide this information.
5. If the Resident provides any documentation from a professional or other qualified person, it should be reviewed to make sure it provides sufficient information to confirm the status and nexus. If not, an attempt to get verification of the information needed directly from the person who signed the form should be first attempted.
6. A HIPAA FORM IS NOT REQUIRED.     Many health care professionals will not discuss the patient without the HIPAA form. **Verification does not require the HIPAA form.** Explain to the health care professional that you are merely verifying the information that has already been provided. If you are unable to verify, you should inform the Resident of the problem to see if they can get the health care professional to provide the verification. Seek assistance from legal counsel and/or your regional manager in this circumstance.
7. It is the intent of these forms to gather sufficient information and verify that information to determine if a reasonable accommodation should be granted or not.
8. Failure to provide sufficient information may be grounds for denial. Sufficient information would include: a description of the animal, verification from someone that the Resident meets the definition of disabled and that there is a nexus between the disability and the need for the animal, and the other information contained on the Animal Identification Form.
9. **All communities should have animal rules. Persons who obtain an animal by reasonable accommodation generally must abide by those rules (excepting breed restrictions and size & weight restrictions). Those rules should be given to residents with animals.**
10. These forms should not be given out unless someone has filled out an application and is actually attempting to rent.
11. Questions on Assistance Animals from *prospective* residents should be answered:
    > ***This Community fully complies with the Fair Housing laws as it applies to disabilities. Persons who desire an accommodation must convey that request to management, who will then attempt to obtain sufficient verified information to determine if the request can be granted and how it can be accommodated. Since every situation is different, each request is treated separately. It is impossible to give a blanket answer on questions of accommodation. If a prospective tenant desires to apply, we will then accept any request and make a full review to see if it can be accommodated.***
12. If you have any questions on a request, contact legal counsel.
13. If you think someone is testing your community on reasonable accommodation, contact your regional manager/owner and contact legal counsel.



© The Law Offices of Kirk A. Cullimore 4/2015 This form may not be reproduced without express written permission.

# Resident's Request for Assistance Animal

*The undersigned does hereby request as assistance animal and does hereby attest and state as follows:*

**1. Handicap Definition**  I am aware of the requirements of the Fair Housing Act and its definitions which include:
*"Handicap" means, with respect to a person –*
*(1) having a physical or mental impairment which substantially limits one or more of such person's major life activities,*
*(2) having a record of having such an impairment, or*
*(3) being regarded as having such an impairment, but such term does not include current, illegal use of or addiction to a controlled substance.*

**2. Qualification**  Pursuant to the definition above, I do qualify as an individual with a disability.

**3. Impairment**  I represent that the requested assistance animal is necessary to provide assistance with my disability.

The anticipated length of this disability is _____.

My primary care physician is Dr._____ whose telephone number is _____.

**4. Request**  I do hereby request that I be able to reside with an assistance animal at the premises below. I certify that the statements herein are true as provided on the Animal Identification Form and the Medical Request for an Assistance Animal. I agree that the only animal I will keep for this purpose is listed therein and that I will abide by the rules and regulations of the community regarding animals. I understand that I will not have to pay additional costs or fees for the assistance animal but will be responsible for any damage caused. I request that my professional provide verification of the required information to my housing provider to assist in making this determination.

Applicant's Name _____

Premises Address _____

_____

Dated _____          _____
                                        Signature of Applicant

 © The Law Offices of Kirk A. Cullimore 4/2015 This form may not be reproduced without express written permission.

## <u>Animal Identification Form</u>

Type of animal _____        Breed _____

Age _____        Approximate Weight _____        Color _____

Describe any special training or certifications _____

_____

Has the animal ever been reported to authorities (police, animal control) for any incident or for any reason? _____.   If yes, please provide details.

_____

**Animals may not be in the common areas of the community unless on a leash or an**

**approved device based upon the animal's certification.**

**Animals may be restricted from specific areas.**

**The animal's owners are responsible for cleaning up after the animal and for any damage**

**done by the animal.**

**Animals may not disturb the peaceful and quiet enjoyment of the other tenants.**

**The Community may have other regulations and rules relating to animals.**

**I affirm that the animal is in compliance with all state and local laws concerning animals.**

I have read the rules and regulations concerning animals (both above and those policies of the community), and agree to their terms.

_____        _____

Resident's signature        Dated

*Please provide a photo of the animal.*

 © The Law Offices of Kirk A. Cullimore 4/2015 This form may not be reproduced without express written permission.

## <u>Verification for Assistance Animal</u>

Name of Person making Request _____

A request has been made to allow an assistance animal to reside with the above named individual. Such request has been made pursuant to The Fair Housing Act. In order to qualify for an assistance animal exemption to the normal rules of the community, the person making the request **must qualify as handicapped as defined**, which is:

> *"**Handicap" means, with respect to a person** –*
> *(1)  having a physical or mental impairment which substantially limits one or more of such person's major life activities,*
> *(2) having a record of having such an impairment, or*
> *(3)  being regarded as having such an impairment, but such term does not include current, illegal use of or addiction to a controlled substance.*

> *<u>Additionally, the assistance animal must assist the person in ameliorating the disability and/or the major life activities effected.</u>*

**Much like a prescription, this request is made because of the professional's opinion that the assistance animal may be necessary to afford the disabled person an equal opportunity to use and enjoy the leased premises.  With this request and upon approval, the management of the premises must allow the animal on the premises and is prohibited from charging pet rent or other fees normally charged to persons with pets.  Assistance animals are not pets but animals that are determined by competent professionals to be an important and necessary part of treatment or assistance of a disability/handicap.**

Professional's Name: _____   Telephone number: _____

*I certify that I have sufficient information and have consulted with the person making this request in order to make this determination. I certify that the above named person is handicapped as defined above and that the animal described below is, in my professional opinion, necessary to afford an equal opportunity to use and enjoy the leased premises.*

Prescribed Animal's Description _____

Expiration Date of this Certification _____

_____
Date

_____
*Signature of* Medical Provider,
Health or Social Service Professional



© The Law Offices of Kirk A. Cullimore 4/2015 This form may not be reproduced without express written permission.